## UNION STOCK YARDS AND TRANSIT COMPANY

### v.

## JOHN ROURKE, Adm'r.

NEGLIGENCE—TRESPASS UPON PRIVATE PROPERTY.—The owner of private grounds is under no obligation to keep them in a safe condition for the benefit of idlers, bare licensees, or others, who come upon them, not by any invitation, either express or implied, but for their own convenience or pleasure.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed February 24, 1882.

This was an action on the case, brought by John Rourke, administrator of the estate of Bernard Rourke, deceased, against the Union Stock Yards and Transit Company of Chicago, to recover damages for the death of the plaintiff's intestate, caused, as is alleged, by the negligence of the defendant. It appears that at the time of the death of the plaintiff's intestate, and for several years prior thereto, the defendant was the owner of the east half of section 5, township 28, range 14, in Cook county, said land being occupied by the yards and buildings of the defendant, except a tract bounded on the east by Laurel street, on the south by Transit avenue, on the west by Fowler's Packing House, and on the north by the southern boundary line of the city of Chicago. Along said north line there ran one of the forks of the south branch of the Chicago river, and formerly a half street running east and west, known as Thirty-ninth street, was laid out along the north side of the line, but said half street appears to have been vacated by the city of Chicago about the year 1868, for the purpose of allowing said fork of the river to be dredged out and made navigable. On the defendant's land south of the line, no street had been laid out. The earth or clay was afterwards dredged out so as to widen and deepen the stream, and used by the proprietors of neighboring brick-yards in the manufacture of brick.

A portion of this dredging was done south of the line, so that at the time of the death of the plaintiff's intestate, the southerly bank of the river was some thirty feet or more over onto the defendant's land; but none of said excavations appear to have been made by or with the consent of the defendant.

It appears that formerly, the sewers from the various packing houses situated adjacent to and west of the defendant's yards, but not on its property, emptied into the river, and that thereby grease, animal matter and other substances were carried into the stream, causing a rank and offensive scum to rise on the surface of the water; and that to procure an abatement of the nuisance thereby created, the health commissioner of the city and the clerk of the health department, some years prior to the death of the plaintiff's intestate, visited the Stock Yards, and consulted with the defendant's officers and the proprietors of the packing houses for the purpose of devising, if possible, some means to remedy or prevent the flow of offensive matter into the river.   As a result of this conference it was determined that private drains should be constructed from the various packing houses to a large drain belonging to the South Park Commissioners, which ran across the defendant's land bounded as above, to the river, and that a system of catch-basins should be constructed near the mouth of this large drain, so as to arrest the flow of grease and animal matter, and allow it to be dipped up or skimmed out and prevented from escaping into the river.   To carry out this scheme, permission was given by the defendant's superintendent, to John Brennock, the proprietor of one of the packing houses, to occupy said tract of land and construct catch-basins thereon, and the latter thereupon took possession of said tract, enclosing it with a fence, except on the side bordering on the river, and erected and afterwards maintained thereon a system of catch-basins, and the evidence tends to show that from that time to April, 1878, the date of the death of the plaintiff's intestate, he was in the sole and exclusive occupancy of said tract of land, although there is evidence tending to show that during some of this time the defendant was in the habit of depositing on a portion of the tract, manure and other substances from its Stock Yards.

Some time prior to April, 1868, a lane twenty feet wide had been constructed along the south side of said tract of land, and used by Fowler Brothers for driving hogs to their packing house. This lane was formed by the erection of a second fence twenty feet north of the one along Transit avenue, and was planked, and inclosed at each end with a gate; and the evidence shows that in April, 1878, Fowler Brothers were in the habit of driving through it to their packing house from five hundred to seven thousand hogs per day. There is no dispute that at that time, these several fences inclosing the land in question were standing, although the evidence is quite conflicting as to their state of repair, some of the witnesses testifying that they were still in good repair and condition, and others that they were badly broken down, so as to leave holes or gaps through which persons could pass without obstruction onto and across said land.

It appears, however, that in point of fact, great numbers of persons, consisting of those employed about the Stock Yards and packing houses and others, were daily in the habit of going across said land to the bridge over the river on Laurel street, and other points, that route being shorter and more direct than by way of Transit avenue, and that paths were worn in various directions across said land by persons passing over it; but there is no evidence tending to show that it was used in this manner by the invitation, permission or consent of the defendant; though it can scarcely be doubted that the officers of the defendant were aware of the fact that it was being so used.

The evidence shows that, notwithstanding the construction of the catch-basins, a large amount of animal and other matter was discharged into the river, and that said matter formed a scum or crust on the water at times several inches in depth, the surface of which became dry, cracked and covered with dust, so as to present the appearance of solid earth, though entirely incapable of supporting the weight of a person stepping onto it. The witnesses describe it as resembling the bottom of a pond from which the water had dried up, showing that it was of such a character as to be likely to induce one not acquainted with it to suppose it to be dry land; and the evidence

tends to show that the condition of the premises in this respect was known at the time to the officers of the defendant.

On a certain day in April, 1878, the plaintiff's intestate, who, so far as appears, had no acquaintance with the premises in question, went to a place a considerable distance southeast of said premises, for the purpose of obtaining employment, and was directed by the person to whom he made application to go to work at another place situated a mile or two northwest of said premises. He started for the place to which he was directed, and, so far as the evidence shows, nothing more was seen of him. As he failed to return to his home, search was made for him, and after several days his body was found in the river, on the defendant's land, a few feet from the bank, at a point where the surface of the water was covered over with a scum or crust such as it above described.

On the trial in the court below the jury found the defendant guilty, and assessed the plaintiff's damages at $2,000, for which sum and costs the plaintiff had judgment.

Mr. IRUS COY, for appellant; that to constitute a cause of action in a case of this nature, there should be shown a right on the part of the plaintiff, a duty on the part of the defendant in respect to that right, and a breach of that duty by the defendant, whereby the plaintiff has suffered injury, cited Maenner v. Carroll, 46 Md. 212; Hormsell v. Smyth, 76 B. & S. 731; Brinks v. South York Co. 3 B. & S. 244; Sweeny v. Old Colony, etc. R. R. Co. 10 Allen, 372; Howland v. Vincent, 10 Met. 373; Bolch v. Smith, 7 H. & N. 736.

For the ordinary imperfections, unguarded excavations of ditches upon his private grounds, the owner of the land is not liable: Hardcastle v. South Yorkshire R. R. Co. 4 H. & N. 67; Hamnel v. Smyth, 76 B. & S. 731; Gantrel v. Edgerton, 2 C. P. 371; Louisville R. R. Co. v. Murphy, 9 Bush, 522.

A trespasser who comes upon the land of another without right, can not maintain an action if he runs against a barrier or falls into an excavation there situated: Sweeny v. Old Colony R. R. Co. 10 Allen, 372; Kohn v. Levitt, 44 Geo. 251; Hydraulic Water Co. v. Orr, 83 Pa. St. 332; Beck v. Carter, 68

N. Y. 283; Harlon v. Humiston, 6 Cow. 189; Stafford v. In-
gerson, 3 Hill, 38; Wills v. Howell, 19 Johns. 385; Nicholsen
v. E. R. R. Co. 41 N. Y. 531; Ill. Cent. R. R. Co. v. Godfrey,
81 Ill. 500; C. R. I. & P. R. R. Co. v. Bell, 80 Ill. 102.

A party seeking to recover damages in cases like this, must
show that his own negligence has not concurred in producing
the injury: Aurora Branch R. R. Co. v. Grimes, 13 Ill. 585;
C. B. & Q. R. R. Co. v. George, 19 Ill. 510.

BAILEY, J.    The deceased, at the time of his death, was upon
the defendant's land without any invitation from the defend-
ant, either express or implied, and without legal right.    Many
other persons, it is true, were in the habit of passing over said
land of their own motion and for their own convenience, and
it does not appear that any objection to their so doing was ever
raised by the defendant, but these facts, at the utmost, only
raise an implication of a license to the deceased, to do the same
thing, but gave him no right beyond that of a mere licensee.

The hole, chasm or trap, if it may be so called, into which
he fell, was not constructed by the defendant, nor was it the
result of any affirmative act on its part.    The excavation was
made by other parties without its procurement or consent.
The refuse matter which formed the scum or crust on the sur-
face of the water came from the packing houses of other parties,
in which the defendant had no interest, and over which it had
no control.    If the defendant was chargeable with negligence
at all, it was in failing to abate the nuisance, after it had been
created by others, or to surround it with such protections or
warnings as would have been sufficient to ward off such persons
as might see fit to traverse that portion of its grounds. . In
other words, its negligence, if any, was mere passive negligence.

It is a general rule of law, that the owner of private grounds
is under no obligation to keep them in a safe condition for the
benefit of trespassers, idlers, bare licensees, or others who come
upon them, not by any invitation, either express or implied, but
for their own convenience or pleasure, or to gratify their curi-
osity, however innocent or laudable their purpose may be.
See. 1 Thomp. on Neg. 303, where all the cases on this subject
are collected and discussed.    Many of these authorities are re-

viewed in Sweeney v. Old Colony and Newport R. R. Co. 10 Allen, 368, and the court, in laying down the rule applicable to cases like the present, say: "The owner of land is not bound to protect or provide safeguards for wrong-doers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for the use of customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." To the same effect see Hargreaves v. Deacon, 25 Mich. 1, and cases there cited.

This rule is doubtless subject to some qualifications. Thus various cases are found where it is held that the owner who has set spring-guns or other instruments of destruction upon his own grounds for the defense of his property, is liable to trespassers who, without notice of such contrivances, have entered upon such grounds and received injury. Ilott v. Wilkins, 3 Barn. & Ald. 304; Bird v. Holbrook, 4 Bing. 628; Hooker v. Miller, 37 Iowa, 613.

Another exception is where the owner permits dangerous pitfalls or obstructions to remain on his land, so near a _high-way_, that, combined with the ordinary incidents of travel, they result in injury to persons or animals passing along the highway. Thus, a person who had made an excavation on his own land abutting upon a highway, and left it unfenced, was held liable to a traveler, who, without fault on his part, fell into it and was injured. Barnes v. Ward, 9 C. B. 392. The same rule was applied where the excavation was fourteen inches from the line of the highway. Hadley v. Taylor, L. R. 1 C. P. 53. It was held otherwise, however, when the excavation was twenty-

four feet from the highway.    Binks v. South Yorkshire R. W. Co. 3 Best & Smith, 244.    In that case the defendant had constructed a canal parallel with an ancient footway, and about twenty-four feet distant therefrom.    Along the bank of the canal was a tow path, and it appeared that the intermediate space between that and the footway had been obliterated by travel thereon, and other uses authorized by the defendant.

The plaintiff's intestate, while attempting to travel along the footway in a dark night, strayed therefrom, and fell into the canal and was drowned, and it was held that the defendant was not liable.    In Hardcastle v. South Yorkshire R. W. Co. 4 Hurl. & Norm. 67, where the facts were nearly identical with those appearing in the case last cited, Chief Baron Pollock, in holding that there was no liability, said: " When an excavation is made adjoining to a public way, so that a person walking upon it might, by making a false step, or being affected with sudden giddiness, or, in case of a horse or carriage way, might, by a sudden start of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences; but when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to us to be different.    We do not see where the liability is to stop.    A man getting off a road on a dark night, and losing his way, may wander to any extent; and if the question be for the jury, no one can tell whether he is liable for the consequences of his act upon his own land or not.    We think the proper and true test of legal liability is, whether the excavation be substantially adjoining the way—and it would be very dangerous if it were otherwise;—if in every case it was to be left as a fact to the jury, whether the excavation were sufficiently near to the highway to be dangerous."    See also Hounsell v. Smith, 7 C. B. 731.

There is also a class of cases constituting a further exception to the rule above stated, where the owners of grounds are held liable for injuries resulting to *children*, although trespassing at the time, where, from the peculiar nature and exposed position of the dangerous defect or agent, the owner should reasonably

anticipate such injury to flow therefrom as actually happened. In such cases it is held that the question of negligence is for the jury. Among cases of this class may be mentioned Birge v. Gardiner, 19 Conn. 507, where the defendant, having set up a gate on his own land, by the side of a lane through which the plaintiff, a child between six and seven years of age, and other children were accustomed to pass, and the plaintiff while going along the lane, without permission from any one, put his hand on the gate and shook it, in consequence of which it fell on him and broke his leg. Also Railroad Co. v. Stout, 17 Wal. 657. There the railroad company had a turn-table situated near two traveled roads in a small village. The latch by which it was fastened was broken, and children could easily turn it around. Three small boys went to it to play, and while two of them were turning it around, the foot of the third was caught in it and crushed. Whether there was negligence on the part of the railroad company, was held to have been properly left to the jury.

In Keffe v. Milwaukee & St. Paul R. W. Co. 21 Minn. 207, the facts were very similar to the last preceding case, and the same rule was adopted. In Mullaney v. Spence, 15 Abb. Prac. (N. S.) 319, the owner of a coal yard had an elevator worked by steam, close to the sidewalk. During an intermission of work, the sliding door by which it was usually shut off from the street was left open and unguarded, in consequence of which a child got under it, and was crushed by a descending car. The question of negligence was held to be for the jury. In Hydraulic Works Co. v. Orr, 83 Penn. St. 332, the defendant had, in a private alley, about twenty-four feet from the street, a heavy platform on hinges, so that when in use it could be thrown across the alley or cart way, and when not in use could be thrown back against the wall of a building. At the time of the accident it was in the latter position, and was kept in place only by a slight inclination towards the wall, and was liable to be tilted over when touched. The deceased, a boy about six years old, was playing in the street, and the gates being open strayed with several companions of about his own age into the alley, and while at play there, received an

injury by a fall of the platform, of which he died. The question of negligence having been submitted to the jury and a verdict found for the plaintiff, judgment thereon was affirmed. See, also, Whirley v. Whitman, 1 Head, 610.

The distinguishing principle upon which all these cases rest is that the persons injured were mere children, without judgment or discretion, and likely to be drawn by childish curiosity, or by the instincts and impulses of childhood, into places of danger. It is therefore held to be negligence to leave traps or pitfalls exposed on private grounds in the vicinity of public highways or other places where children are likely to be found.

As was said in Keffe v. Milwaukee & St. Paul R. W. Co., *supra*, where the plaintiff was injured while playing with the defendant's turn-table, "What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years." The principle is somewhat analogous to that applied in Townsend v. Wathen, 9 East. 277, where it was held to be unlawful for a man to tempt his neighbor's dogs by setting traps on his land baited with strong-scented meat, by which the dogs were allured to come upon his land and into his traps. There the appeal to the natural instincts of those animals was regarded as equivalent to the use of manual force. The instincts of childhood may be regarded as being, to a certain degree, analogous in their operation to those of domestic animals, and to that degree governed by the same rules. Where the person injured, however, is an adult, capable of knowing and presumed to know the limits of those places where he may go as of right, and the fact that when he transcends those limits he is a trespasser, the duty of a proprietor of private grounds towards him rests upon a totally different foundation.

It is apparent from what we have said that the present case falls within neither of the exceptions above mentioned. The deceased was a man of mature years; the chasm into which he fell was neither adjoining nor in the vicinity of a public highway, and the defendant was in no way responsible for its original existence, but merely for passively allowing it to remain without protection or warning. Such being the facts, we know of no authority or principle upon which the defendant can be

held liable.   The Supreme Court of Michigan, in the very well considered case of Hargreaves v. Deacon, *supra*, in discussing the right of protection against pitfalls in both highways and upon private grounds, says:   " If in a highway or sidewalk, the duty of protection extends to all persons who have a legal right to go there, or, in other words, to the whole public, and it depends upon that right; if on private property, not open to the public, it applies less generally, and only to those who have a legal right to be there, and to claim the care of the occupant for their security while on the premises against negligence, or to those who are directly injured by some positive act *involving more than passive negligence.*"

We are referred by counsel for the appellee to the case of Young v. Harvey, 16 Ind. 314, as establishing a different rule. There the defendant had commenced to dig a well on his uninclosed lot, in the suburbs of Indianapolis, without the corporate limits, near the line of a street, and after sinking it to the depth of six feet, abandoned it.   In this condition it was left a long time but partially covered with loose boards, and most of the time not covered at all.   A horse lawfully grazing on the commons, fell into it, and was killed, and it was held that an action for damages could be sustained.   It will thus be seen that that case differs from the present one, in two very essential particulars, viz.: that the excavation was near the highway, and that the horse was lawfully grazing upon the defendant's uninclosed land; and while the remarks of the court in that case, as applied to those facts, seem to be entirely unobjectionable, we are unable to regard them as authority in the case at bar.

Exception is taken to a number of the instructions given to the jury at the instance of the plaintiff, but as we are of the opinion that the verdict is not supported by the evidence, we need not take time to consider them, but for the reason stated, the judgment will be reversed and the cause remanded.

Judgment reversed.