KINNEY v. ONSTED.

NEGLIGENCE—DANGEROUS PREMISES—LIABILITY OF PROPRIETOR.
The proprietor of a grain elevator is not liable for injuries to a customer occasioned by the giving way of a railing about an elevated platform, even though he had knowledge of its defective condition, where the customer, at the time of the accident, was putting the railing to a use other than that for which it was intended, by leaning against it for support.

Error to Lenawee; Lane, J. Submitted April 30, 1897. Decided May 25, 1897.

Case by George B. Daniels against John Onsted for personal injuries. There was a judgment for plaintiff, and defendant brought error. Plaintiff died pending the appeal, and the cause was revived in the name of his administrator, Frank D. Kinney. Judgment reversed.

*Salsbury & O'Mealey*, for appellant.

*Watts, Bean & Smith*, for appellee.

MONTGOMERY, J. This action was instituted by George B. Daniels in his lifetime, to recover damages sustained by reason of the alleged defective condition of the defendant's premises. The material facts in the

case, as disclosed by the evidence, are that the defendant was the proprietor of a grain elevator, which consisted of a building 22 feet wide and 40 feet in length. On the south side of this building there is a bridge 12 feet in width, with an approach leading up to it at either end, of the same width. A pair of rolling doors, 7½ feet wide, open from about the center of the building onto this bridge or elevated platform. One means of approach to the office, which is in the elevator building, is to follow the driveway up to the platform, and across it, through these doors. Near the edge of this platform is a railing fastened to posts spiked to the sills of the bridge or platform. The posts are 4 by 4, with 2 by 6 pieces spiked lengthways on top. The railing is 3 feet high. In front of the rolling doors a space of 10 feet wide is left, where there is no railing, having been left out to facilitate the loading of heavy articles into farmers' wagons. The portion of the railing east of this opening is 20 feet long before the grade portion of the bridge is reached. On the west of the opening there is a railing 10 feet long, on the level part of the bridge, and another railing on the west grade, 8 feet in length. Farmers, in delivering grain to the elevator, drove onto the bridge, and, by means of a spout attached to the wagon, ran the grain into the hopper.

The testimony tends to show that, a few days prior to the injury to the plaintiff, there had been a runaway, and the railing had been damaged, the top piece being torn off from the posts, and the posts also weakened; that the railing had been straightened up in such manner that its appearance did not indicate its weakness to the casual observer. The plaintiff, on the day in question, started to go to the elevator to buy a load of corn of the defendant. He went onto the bridge from the west approach, well to the south side of the platform, and was passing in a northeasterly direction, to go through the rolling doors into the elevator building. If he had kept on in that direction,

it would have brought him on the inside of the elevator, where his business with the proprietor was to be transacted; but it appears that at this time his son, Willis Daniels, and William Knapp, were on the bridge, unloading a load of wheat, and his son called to him, saying that he had some money for him. At that, plaintiff turned southeast, came up to the south side of the wagon, near the center, a distance of 15 or 16 feet, where his son was, and got the money. After he got it, he was talking with these two men a few minutes about the horses, and, while so talking, leaned against the railing, and it gave way, and he fell to the ground, and was injured. Upon this state of facts, the plaintiff recovered, and the defendant brings error, and contends that there is no case shown by the plaintiff's testimony entitling him to recover, and that the defendant was under no obligation to build a railing, or keep it in repair, for the plaintiff to lounge or sit upon or lean against. The plaintiff, on the other hand, contends that the case falls within the rule that where a party, expressly or by implication, invites others to come upon his premises, whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and, to that end, he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.

This case is certainly near the dividing line. The rule is well settled that the owner or occupant of land is liable to those coming to it at his invitation, express or implied, on any business to be transacted or permitted by him, for an injury occasioned by the unsafe condition of the land or the access to it, which is known to him and not to them, and which he has negligently suffered to exist. But this duty, it is held, does not extend so far as to make such an occupant responsible for the unsafe condition of those parts of his premises not intended for the reception of visitors or customers, and where they are not expected to go. See 1 Thomp. Neg. p. 308. Applying these rules to this case, it is clear that, if the plaintiff

had suffered an injury from a defect in the floorway of the platform or bridge, or, possibly, if, by misadventure, he had stumbled and fallen against this defective railing, there would be ground for holding that the defendant was responsible for the injury. But the weakness of the plaintiff's case is that the defendant never invited him to enter upon his premises, and put the railing to the test of supporting his weight, by leaning or lounging against it.

The only cases in which a similar question has arisen, which have been called to our attention, are those of *Stickney* v. *City of Salem*, 3 Allen, 374, and *Orcutt* v. *Bridge Co.*, 53 Me. 500. In *Stickney* v. *City of Salem* the action was against the city for injuries resulting to deceased caused by leaning against a fence or railing which marked the terminus of a street, and was built upon the top of a sea wall. The deceased, in company with a friend, had walked to this point to view the sea, had turned his back to and leaned against this railing, which gave way, because of defects, and he received serious injuries. The court say:

"The fact that the railing was defective, and would have proved an insufficient barrier in case it became necessary for a traveler to use it for a legitimate object, is wholly immaterial. It is a sufficient answer to the plaintiff's case that the defendants were not bound to keep the railing in repair for the purpose for which it was used by the deceased at the time of the accident."

The case of *Orcutt* v. *Bridge Co.* is precisely analogous to that of *Stickney* v. *City of Salem*.

It is urged by plaintiff's counsel that a distinction exists between private premises and a public highway in this regard, and that the rule of care required of the highway authorities is based upon a different principle from that of private parties inviting persons upon their premises. We think, however, that this distinction cannot avail the plaintiff in this case. The invitation to the plaintiff was to do business in the elevator. The approach to the place of business was an elevated private way. It could not be

expected any more by this defendant than by the city authorities of Salem in the case cited that this private way would be put to any other than the uses to which it was apparently adapted. Undoubtedly, in the case of a municipality or an individual maintaining a way, an injury resulting from a defect in the way itself, to one who stops to transact business, may be recovered for. But the weakness of the plaintiff's case arises from the fact that this railing was put to a use for which it was not intended, any more, in the present case, than were the railings in the cases cited from Massachusetts and Maine. Plaintiff's counsel concede that the defendant was under no obligation to build or keep the railing in repair for plaintiff to lounge or sit upon or lean against, but they contend that the defendant's liability arises out of his knowingly permitting a snare or trap, by leaving the railing in apparent good order, but in fact so defective that one was liable to receive injury from it. But, before it could become a snare or trap, it must be assumed that its apparent good condition was an invitation to make such a use of it as the plaintiff attempted. As we have seen, its presence was not an invitation to make that use of it.

We think there was no case for the jury, and that the judgment should be reversed, and no new trial ordered.

The other Justices concurred.