[L. A. No. 1132. In Bank.—August 19, 1904.]

WALTER MEANS, a Minor, by his Guardian ad Litem, Appellant, v. SOUTHERN CALIFORNIA RAILWAY COMPANY, Respondent.

NEGLIGENCE — INJURY TO PLAINTIFF IN FREIGHT DEPOT — ENTRY FOR TRANSACTION OF BUSINESS—BURSTING OF SULPHURIC-ACID TANK—SUFFICIENCY OF COMPLAINT.—A complaint in an action for an injury sustained by the plaintiff in defendant's freight depot, from the bursting of an iron tank containing sulphuric acid, owing to defendant's negligence, is sufficient, if correctly framed upon the principle that the defendant owed a legal duty to the plaintiff, as having lawfully entered upon defendant's premises for the transaction of

business, to exercise reasonable care to see that the premises were in a safe condition, and that for failure to do so the defendant is liable in damages for any resulting injury.

ID.—PROOF REQUIRED—FAILURE OF EVIDENCE—ENTRY AS MERE LICENSEE. —To sustain a complaint for actionable negligence the proof must show the duty of defendant to protect the plaintiff from injury, the failure to discharge it, and the resulting injury; and the absence of proof of any of these is fatal to a recovery. Where the evidence failed to sustain the averments of the complaint, and showed that the defendant entered the freight depot as a mere licensee, without invitation, express or implied, to whom the defendant owed no duty to keep the premises in a safe condition, but merely to inflict upon him no wanton or willful injury, which injury was not shown, no right of action is sustained by the evidence.

ID.—ASSUMPTION OF RISKS BY LICENSEE.—A mere licensee who enters upon the defendant's premises uninvited assumes all of the ordinary risks which attach to the condition of the premises or the manner of the conduct of the defendant's business by its agents thereon. He enters upon the premises at his own risk, and enjoys the license with its concomitant perils.

ID.—WANT OF ORDINARY CARE OF OWNER.—The owner of the premises is not liable for an unsafe condition of the premises caused by a mere failure to use ordinary care for the safety of mere licensees while he is using the place for his own proper purposes, and is not intending needlessly to expose others to danger.

ID.—USE OF DANGEROUS ARTICLES—LIMITED RULE—INAPPLICABILITY TO SULPHURIC ACID IN IRON TANKS.—The general rule that one using or handling dangerous articles does so at his peril, and for injuries sustained thereby, other than through the interposition of strangers or caused by extraordinary natural occurrences, must respond in damages, is limited to articles inevitably and in their elements dangerous, and calculated in their nature to cause injury. The rule does not apply to the handling of sulphuric acid in iron tanks, which is the usual and only method employed in its shipment in large quantities, and which is not ordinarily or inherently dangerous, and does not require more than ordinary care on the part of a railroad company in disposing of it in its freight-house.

ID. — RIGHTS OF DEFENDANT — ABSENCE OF POSITIVE DUTY — PASSIVE NEGLIGENCE.—The acid not being in itself a dangerous agency, and being contained in iron tanks such as were usually employed for like shipments, the defendant had a right to assume, so far as plaintiff was concerned, that such tanks were sound and secure, and sufficient to withstand the ordinary perils or dangers incident to transportation, handling, or storage. No positive duty was cast upon the defendant to examine the tank to ascertain whether it was in good condition or not; and a failure to do so amounted to nothing more than passive negligence, an injury arising from which confers no right of action upon plaintiff as a mere licensee.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

M. K. Young, and J. W. McKinley, for Appellant.

The evidence shows a license to the public to use the freight depot, which renders the defendant liable for its negligence in keeping the tank in a hot place upon the platform, with its head bulged out. (*Hansen* v. *Southern Pacific Co.*, 105 Cal. 379; *Townley* v. *Chicago etc. Ry. Co.*, 53 Wis. 626; *Judson* v. *Giant Powder Co.*, 107 Cal. 556, 562;[1] *California Powder Works* v. *Railroad Co.*, 113 Cal. 335; 1 Hilliard on Torts, 3d ed., 127; *Atlanta etc. Mills* v. *Coffee*, 80 Ga. 145;[2] *Young* v. *Bransford*, 12 Lea, 232; *Kables* v. *Orth*, 61 Wis. 531; *Breen* v. *New York etc. R. R. Co.*, 109 N. Y. 297.[3])

C. N. Sterry, for Respondent.

The defendant owed no duty to the plaintiff. He was in a part of the premises where the public were not invited, and where the plaintiff had no right to be. If he were a bare licensee, the defendant owed no duty but that of not inflicting upon him willful or wanton injury. He cannot be protected from the mere neglect of the defendant. (*Giles* v. *Pennsylvania R. R. Co.*, 59 Pa. St. 129;[4] *Baltimore etc. R. R. Co.* v. *Schwindling*, 101 Pa. St. 258;[5] *Pittsburgh etc. R. R. Co.* v. *Bingham*, 29 Ohio St. 364.[6]) The explosion was exceptional, and one that could not reasonably have been anticipated. No similar accident had occurred in the ordinary and usual handling of sulphuric acid in iron tanks. (*Purdy* v. *Westinghouse Electric etc. Co.*, 8 Am. Neg. Rep. 543.)

LORIGAN, J.—This action was brought to recover damages for personal injuries sustained by plaintiff, through the bursting of a tank of sulphuric acid in the freight-house of defendant.

Prior to October 20th, defendant, as a common carrier, received at its station at North Ontario, California, consigned to one Jesson, a druggist at that place, an iron tank containing

[1] 48 Am. St. Rep. 146.

[2] 12 Am. St. Rep. 244.

[3] 4 Am. St. Rep. 450.

[4] 98 Am. Dec. 317.

[5] 47 Am. Rep. 706.

[6] 23 Am. Rep. 751.

sulphuric acid, which was placed by its agent in its freight-house. This tank was of the customary size and kind used in the shipment of sulphuric acid in large quantities. The freight-house is separate and distinct from any other building on the depot premises, and is used solely for freight purposes. It is built on a platform, raised some four feet from the ground, the eastern portion being entirely closed with doors opening to the north, south, and east, and the western portion adjoining being roofed, but uninclosed on the sides. The freight-house is reached by inclined approaches at three ends of the platform, and there is ample unobstructed space around the building on the platform for the convenient handling of freight and the passage of persons. The tank in question, with other tanks of similar character and contents, had been placed by defendant's agent about the center of the un-inclosed portion of the freight-house, and the consignee had made arrangements to take it away upon the day when the accident occurred.

In the afternoon of that day—October 20th—plaintiff, a boy sixteen years of age, in company with two other boys of about the same age, started for the defendant's depot, the object of plaintiff's visit being to get an express package from the office of Wells, Fargo & Co. This office was located in the passenger-building, which in no wise was connected with the freight-house or its premises. When some distance from the depot, he saw standing somewhere in the uninclosed portion of the freight-house a man to whom he wished to talk about moving a shanty, and, instead of continuing towards Wells, Fargo & Co.'s office, he went with his companions over to the freight-house. When he got there the person he wished to see was not in sight, but, hearing voices in the inclosed portion of the freight-house, he supposed he was there, and concluded to await his coming out through the south door of the in-closed freight-house, which was open. Plaintiff could readily have gone to this south door, to which there was a clear ap-proach, and waited there and spoken to the party he wished to see, or could have ascertained whether he was in fact inside, and, if not, could have gone directly along down the inclined approach on that side of the freight-house to the office of Wells, Fargo & Co., his original point of destination.

Instead of doing this, however, plaintiff and his companions

went into the uninclosed freight-house to about the middle thereof, to wait, and for that purpose seated themselves upon some cement-barrels located a few feet from where the iron tanks of sulphuric acid had been placed. They were only seated a few minutes when one of said tanks burst, throwing some of its contents upon plaintiff, causing the injuries to recover for which this action was brought.

The evidence further shows that numerous persons, having no business to transact with the defendant company, had been, for years, permitted to be around and about such freight platform, and were not ordered away by the officers of defendant.

At the close of plaintiff's case the court, on defendant's motion, granted a nonsuit. Thereafter plaintiff moved for a new trial, which was denied, and from the order denying the same this appeal is taken.

If it were assumed that there was sufficient proof of negligence on the part of defendant to otherwise warrant the submission of the cause to the jury, we are nevertheless satisfied that upon the entire showing made the plaintiff was not entitled to recover.

The complaint alleged, among other things, that one Short was the common agent of the defendant, the railway corporation, and Wells, Fargo & Co., a common carrier for hire of express packages; that the latter had its office in the depot premises of defendant as its tenant, and that in order to transact business with Wells, Fargo & Co. at its office it was necessary to go upon the premises of defendant; that plaintiff, when said accident occurred, was upon said premises to inquire at the office of said Wells, Fargo & Co. whether a package for him had arrived, etc.

The complaint was framed upon the principle that the owner or occupant of premises, owes a legal duty to one lawfully entering upon them for the transaction of business to exercise such reasonable care, or caution, as a prudent person under like circumstances would exercise, in seeing that the premises are in a safe condition, so as not to expose one lawfully entering upon them to injury or danger, and that, for failure to do so, he is liable in damages for any injury sustained through a failure to discharge such duty. The principle is correct.

In order to constitute actionable negligence there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to a recovery. The facts stated in the complaint met all these essential requirements, but the evidence adduced upon the trial did not accord with the allegations of the complaint, nor square with the principle of law referred to.

The plaintiff was not on the freight-house premises to obtain any package from Wells, Fargo & Co.; he had changed his mind about going to that office; in fact the office of Wells, Fargo & Co. was not on the freight-house premises, was not near the freight-house proper, but was in an entirely different, separate, and distinct building; nor was the plaintiff in the freight-house on business connected with either the defendant company or Wells, Fargo & Co.; he was on his own particular business for his own purpose, and with reference to a matter wholly unconnected with either of the companies, and was seated in a place where even the personal business he was to attend to neither required his presence nor gave him any right to enter.

This evidence showed an entire absence of any duty resting upon the defendant towards the plaintiff with reference to his safety upon the premises where the accident occurred, and, hence, the absence of one of the essential requirements to a recovery. While the allegations of the complaint showed the existence of this duty, the evidence failed to substantiate it. On the contrary, it shows that no such duty existed.

If the plaintiff was not technically a trespasser in entering the freight-house of the defendant, he was at best but a licensee, entering thereon subject to the rule determining the measure of responsibility of the owner of premises to a mere licensee. He was not upon the premises by the invitation, express or implied, of the defendant, nor for any business purpose connected with defendant, nor in relation to any business for which the freight-house, in which he was injured, was used. He went there of his own volition, uninvited, con-

cerning a matter which was personal to himself, in which the defendant had no interest.

As a mere licensee, the defendant owed him no legal duty, except that while upon the premises no wanton or willful injury should be inflicted upon him. It owed no duty to him to have its premises, or the contents thereof in safe condition, and when he entered, uninvited, upon the premises of defendant, he assumed all the ordinary risks which attach to the condition of such premises, or the manner of the conduct of defendant's business by its agents therein. Under such circumstances, as has been repeatedly held, he enters upon the premises at his own risk, and enjoys the license with its concomitant perils. "As a general rule," says Thompson in his Commentaries on the Law of Negligence (vol. 1, 946), "the owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, intruders, idlers, bare licensees, or others who go upon them, not by any invitation, express or implied, but for their own purposes, their pleasure, or to gratify their curiosity, however innocent or laudable their purpose may be."

And in harmony with the general rule, it is said in *Schmidt* v. *Bauer,* 80 Cal. 569: "Conceding that the respondent was not wrongfully in the place where the accident occurred, and giving the most liberal construction to his evidence, he was there by the mere license of the appellant, and for that reason the appellant owed him no duty, and he went there subject to all the risks attending his going." In *Kennedy* v. *Chase,* 119 Cal. 642,[1] it was likewise said: " 'We have found no support for any rule,' says Mr. Thompson, in speaking of the rights of trespassers or mere licensees, 'which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or their relations with the occupant.' " It is said in *Robinson* v. *Leonard,* 143 Ill. 189:[2] "Actionable negligence, or negligence which constitutes a good cause of action, grows out of a want of ordinary care and skill in respect to a person to whom the defendant is under an obligation or duty to use ordinary care and skill. The owner of land and of buildings assumes no duty to one who is on his premises by permission

---

[1] 63 Am. St. Rep. 153.        [2] 36 Am. St. Rep. 376.

only, and is a mere licensee, except that he will refrain from willful or affirmative acts which are injurious." In *Cusick* v. *Adams*, 115 N. Y. 59,[1] the court says: "The principle is now well settled by repeated adjudications in this country and in England, that where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence, for such person has taken all the risk upon himself. The theory of liability in negligence cases is a violation of some legal duty to exercise care." And again in *Moffatt* v. *Kenny*, 174 Mass. 315, the rule is laid down as follows: "It is a general rule that a licensee going upon the land of another must take the land as he finds it. Of course, the landowner is liable if he does him intentional injury, or wantonly or recklessly exposes him to danger. It has sometimes been said that he is liable for a trap upon his land. We are not aware of any decision which distinctly defines the word 'trap' in this use. It would at least include any very dangerous construction, or condition, designedly arranged to do injury. But, we are of opinion that an owner is under no liability for an unsafe condition of his premises caused by a mere failure to use ordinary care for the safety of persons who may chance to go there by permission while he is using the place for his own proper purposes, and is not intending needlessly to expose others to danger. Otherwise, there would be no important distinction between his duty to licensees and his duty to invited persons."

This general principle is too well settled to need further particular citations, but attention is directed to a few authorities from various jurisdictions which sustain the uniformity of the rule. (*Straub* v. *Soderer*, 53 Mo. 43; *Plummer* v. *Dill*, 156 Mass. 426;[2] *Faris* v. *Hoberg*, 134 Ind. 269;[3] *Fitzpatrick* v. *Glass Mfg. Co.*, 61 N. J. L. 379; *Woodruff* v. *Bowen*, 136 Ind. 441; *Leary* v. *Cleveland etc. R. R. Co.*, 3 Am. & Eng. R. R. Cases, p. 498; *Mathews* v. *Bensel*, 51 N. J. L. 33; *Gibson* v. *Leonard*, 143 Ill. 182;[4] *Victory* v. *Baker*, 67 N. Y. 369; *Metcalf* v. *Cunard Steamship Co.*, 147 Mass. 66; *Redigan* v.

---

[1] 12 Am. St. Rep. 772.

[2] 32 Am. St. Rep. 463, and note.

[3] 39 Am. St. Rep. 261.

[4] 36 Am. St. Rep. 376.

*Boston etc. R. R. Co.,* 155 Mass. 44;[1] *Kinney* v. *Onstead,* 113 Mich. 96;[2] *Pittsburg etc. R. R. Co.* v. *Bingham,* 29 Ohio St. 364;[3] *Giles* v. *Pennsylvania R. R. Co.,* 59 Pa. St. 129;[4] *Parker* v. *Portland Pub. Co.,* 69 Me. 176;[5] *Union Stock Yards etc. Co.* v. *Rourke,* 10 Ill. App. 474; also *Grundel* v. *Union Iron Works,* 141 Cal. 564, and cases there cited.)

Appellant insists, however, that under the facts of this case a different rule of liability is to be applied; that this consignment of sulphuric acid was of such a dangerous character that the defendant was under legal obligation to the public generally not to so place and expose it in its freight-house that a person—licensee or otherwise—could readily come in proximity to it, but was in duty bound to exercise such care, in arranging and disposing of it, that no one might be exposed to injury or harmed from it.

While the general rule is, that one using or handling dangerous articles does so at his peril, and for injuries occasioned thereby, other than through the interposition of strangers or caused by extraordinary natural occurrences, must respond in damages, this rule is nevertheless limited to articles essentially and in their elements dangerous, and calculated, in their nature, to cause injury to property or person.

There is nothing in this case to show that sulphuric acid is essentially and inherently a dangerous agency, or that from its nature any particular peril is attendant upon handling it in iron tanks. This is the usual—in fact the only—method disclosed by the evidence which is employed in its shipment in large quantities. Such tanks had been received and handled by the defendant in considerable quantity at its depot in Ontario prior to the accident in question, and aside from that particular accident there is no evidence showing any similar occurrence attending its receipt or handling on defendant's premises.

From the testimony of witnesses—the only ones who had any practical experience in handling sulphuric acid in iron tanks—it appears that they handled it in considerable quantities covering in one instance a period of eight years, and in the other probably a longer period; that they had handled it

---

[1] 31 Am. St. Rep. 520, and note.      [4] 98 Am. Dec. 317.

[2] 67 Am. St. Rep. 455.      [5] 31 Am. Rep. 262.

[3] 23 Am. Rep. 751.

CXLIV. Cal.—31

in large quantities, and that it was only in exceptional cases, and after long exposure to the change of seasons that any of the tanks burst, and then only in a comparatively few instances. There was nothing to show that these witnesses deemed it dangerous to handle it in iron tanks—in fact, the method of their dealing with it would indicate that they did not, and one of them stated that he did not know it was supposed to be, and did not think it was, unsafe so to handle it. These tanks were kept, with others which did not burst, in the open air, without any protection or covering, subject to all changes of weather and variations of temperature, and only burst after months of exposure under these conditions. No reasons could be assigned by the witnesses for their bursting, nor was the fact that they had done so a matter of notoriety in North Ontario, nor was there any evidence that defendant, or its agents, were advised of this particular fact, or knew under what, if any, circumstances, such tanks were liable to burst. Neither does the evidence disclose the actual cause of the bursting of the tank whereby plaintiff was injured. The reasonable inference is, that there was some slight leak in the tank, through which moisture was absorbed, and, as one of the expert witnesses for the plaintiff stated, under the action of the sun's rays on the iron vessel, in the presence of moisture, a generation and accumulation of hydrogen gas was induced which caused the bursting of the vessel.

We mention these facts, not as bearing upon the general question of the presence, or absence, of negligence on the part of defendant, because we do not discuss that branch of the case, but as addressed to the point that sulphuric acid consigned and handled in tanks, is not inherently such a dangerous substance as to have required defendant to take extra precautions, or exercise more than ordinary care in disposing of it in its freight-house, or which calls for the application of the rule contended for by plaintiff, enlarging the liability of defendant.

As the acid was not in itself a dangerous agency, and was contained in iron tanks, such as were usually employed for like shipments, the defendant had a right to assume, as far as plaintiff was concerned, that such tanks were sound and secure, and sufficient to withstand the ordinary perils or dangers incident to transportation, handling, and storage. No

positive duty was cast upon defendant to examine the tank to ascertain whether it was in good condition or not. A failure to do so amounted to nothing more than passive negligence, and for injury arising from such negligence plaintiff, as a mere licensee, has no right of action.

We are satisfied that the order denying a motion for a new trial was properly made, and it is affirmed.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Henshaw, J., concurred.