SYLVIA BASILIO, a Minor, etc., et al., Plaintiffs and Appellants, v. CHARLES WILLIAM REIF et al., Defendants and Respondents.

Theodore Field for Plaintiffs and Appellants.

Morgan, Wenzel, Lynberg, Stearns & Morris for Defendants and Respondents.

KAUS, P. J.—On September 25, 1965, Emma B. Basilio was six months pregnant with appellant Sylvia Basilio. On that day she was involved in an automobile accident, in which her head was thrown against the sun visor of the automobile. She received no direct blow to the abdomen. She incurred a head injury with neck pain, similar to a whiplash. For a couple of days she suffered some nausea without vomiting. She

felt shaken up.[1] At the time of the accident the expected delivery date was December 27, but she actually delivered on December 8. This was described as being within the "range of a full term delivery." A few hours after Sylvia's birth, the baby started to vomit bile. Doctor L. Patrick Brennan, a pediatric surgeon, was consulted. He advised surgery which was performed by himself within a few hours. The surgery revealed a blocked jejunum.[2] Part of the small intestine had become necrotic and the blood supply had been cut off.

On February 11, 1966, Sylvia, by guardians ad litem, sued several defendants, among them the respondent Charles Reif, for injuries resulting from the September 25, 1965, accident. At the trial there was a sharp divergence of opinion between Doctor Brennan and defendant's expert, Doctor Robert J. McNeil, concerning the etiology of Sylvia's problem. The jury found against Reif on liability and assessed Sylvia's damages at $14,000. Reif then made a motion for new trial which was granted "on the issue of damages only." A motion for a judgment notwithstanding the verdict, concurrently made, was denied. We quote from the trial court's memorandum opinion: "On motion for judgment notwithstanding verdict and motion for a new trial, the Court does not agree with counsel for defendant that there was no conflict in the evidence and that the defendant was entitled to a directed verdict. The expert opinion of Dr. Brennan however illogical and unsound, was evidence favorable to plaintiff Sylvia Basilio and a conflict in the evidence therefore did exist. Defendants' motion for a judgment notwithstanding the verdict will, therefore, be denied.

"After weighing all of the evidence the Court is convinced from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a contrary verdict because the evidence was insufficient to justify the verdict, and that the verdict was given under the influence of passion and prejudice. The Court is convinced not only that the preponderance of the evidence, but that the overwhelming weight of the evidence, clearly supports only one conclusion: —that the disability sustained by plaintiff Sylvia Basilio, which was attributed by her to the accident, was not proximately caused by the accident, and that it was a medical impossibility for that condition to have been caused by the

---

[1] A jury evaluated her damages at $500.

[2] "Jejunal atresia with intrauterine volvulus, of terminal jejunum and proximal ileum, with perforation and meconium peritonitis. . . ."

accident. The Court is satisfied from more than a preponderance of the evidence that the accident did not cause the disability of plaintiff Sylvia Basilio because if she had sustained the twisted intestine at the time of the accident necrosis would have set in at that time and she would not have been born alive. The Court is satisfied that plaintiffs' own expert Dr. Brennan did not initially believe that the condition was caused by the accident, otherwise he would not have made the entries which he made in the hospital records, and particularly he would not have written in the hospital records that the condition occurred one to three months before birth. If Dr. Brennan then believed that the condition was caused by the accident he would have fixed the date of the cause as the date of the accident. Defendants' motion for a new trial as to plaintiff Sylvia Basilio will, therefore, be granted on the issue of damages only.''

The motion for new trial was denied as far as the verdicts in favor of the mother and the father, Oscar Basilio, were concerned. As already noted the mother was allowed $500, the father $200.

■ Appealing from the order, counsel for Sylvia first urges that in the event we affirm, the new trial should be ''on the issue of damages only and not proximate cause.'' It is his contention that because the order did not recite that the new trial was granted on the issues of proximate cause and damages, proximate cause shall not be retried and all that the new jury may determine is the amount of damages.

Undeniably it is arguable that since there can be no liability for negligence without proof of damage (*Fields* v. *Napa Milling Co.*, 164 Cal.App.2d 442, 447-448 [330 P.2d 459, 68 A.L.R.2d 1052]; *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473, 478 [77 P. 1001]; Prosser, Law of Torts (3d ed. 1964) p. 146)[3] and since there was no evidence of any kind that the embryo suffered damage apart from the condition for which Doctor Brennan operated, the court's action in limiting the new trial to ''the issue of damages only''—leaving ''liability,'' which theoretically includes some damage, as established—implies that it found a causal connection between the accident and the trauma. Undoubtedly it would have been better if, in the portion of the order delineating the issues to

---

[3]''Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred.''

be retried, the court had defined the scope of the new trial more clearly. One can visualize a trial where both the cause of the plaintiff's injuries, as well as their extent, are hotly contested. If, in such a case, the new trial is granted ''on the issue of damages only,'' one would be left in doubt whether the court disagreed with the jury on its implied finding of a causal connection, on its evaluation of the monetary equivalent of the injuries, or both. This could conceivably happen although the court has complied, or has attempted to comply with, the requirement of section 657 of the Code of Civil Procedure that it state its reasons for granting the new trial. (*Mercer* v. *Perez*, 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315].) Nothing in this opinion must be construed to mean that an order granting a new trial ''on the issue of damages only'' invariably must be construed as meaning ''on the issue of damages proximately caused only.''

The case at bar is different. The court's specification of reasons fully complies with the statutory mandate (Code Civ. Proc., § 657) as explained in *Mercer* v. *Perez, supra*. The specification of reasons and the order granting the limited new trial are integral parts of one single order. The former illuminates the latter. At the trial, as far as the record shows, the defendant did not even seriously contest the amount of damages, provided, of course, they were caused by the accident in question. Thus while Doctor Brennan testified extensively concerning the life-long effect of the operation on the plaintiff, no one asked Doctor McNeil any questions on the subject. Nowhere in its specifications of reasons does the court indicate that it disagrees with the jury's evaluation of the amount of damages as distinguished from its finding of causation.

A fair reading of the order means that the only issue which will be considered as established at the outset of the new trial is that it was the defendant's negligence which caused the impact between the two automobiles, leaving the issue of proximate cause of plaintiff's condition and its monetary value for redetermination. To limit the new trial to a heretofore virtually uncontested issue, but to hold that it does not encompass the only issue on which the trial court found itself in disagreement with the jury, would be a perversion of justice.

It is suggested that the record does not justify the granting of the new trial on the then available ground that the verdict was given ''under the influence of passion or prejudice.''

(Code Civ. Proc., § 657, subd. 5.)[4] Since we hold that the order was properly made on the basis that the evidence was insufficient to justify the verdict, we need not discuss the point.

Counsel for Sylvia recognizes that in spite of the tightening of procedures in connection with the granting of motions for new trial on the insufficiency of the evidence brought about by the 1965 amendments to section 657 of the Code of Civil Procedure, the order granting the motion must still be affirmed if the trial court has complied with the new procedural requirements (*Mercer* v. *Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315]) and there is substantial evidence to support the order.[5]

As already noted, the trial court fully complied with the procedural requirements of section 657. Attempting to prove that there was no substantial evidence to support a finding opposed to that of the jury, counsel refers us to various passages in Doctor McNeil's testimony, which he claims caused him to be so thoroughly impeached that his opinion was worthless.

We have carefully read the entire record. We cannot possibly agree that Doctor McNeil's clearly expressed opinion that the accident had nothing to do with the baby's problem, does not provide ample support for the order. Quite apart from Doctor McNeil, however, Doctor Brennan's own testimony carried within it the seeds of its own destruction. First and foremost none of the medical records to and including a report dated February 20, 1966,[6] give as much as a hint that

---

[4]"Excessive damages, appearing to have been given under the influence of passion or prejudice" was eliminated as a ground for granting a new trial by the 1967 Legislature. Section 657, subdivision 5 of the Code of Civil Procedure now lists "excessive or inadequate damages" as a ground. The order in question on this appeal was made on July 31, 1967, several months before the statutory change went into effect. In view of our conclusions with respect to the ground of insufficiency of the evidence, we do not stop to explore the significance, if any, of the trial court's failure to use the exact statutory language.

[5]"Two purposes are served by the present requirement of specification of reasons, and both are related to the traditionally broad powers exercised by the trial judge in passing on a motion for new trial. Such a motion is addressed to the judge's sound discretion; he is vested with the authority, for example, to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact; on appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. . . ." (68 Cal.2d at p. 112.)

[6]The report in question is not among the exhibits in possession of the superior court. There were several pages of testimony relating to the

he ascribed the condition to the accident; yet he stressed the careful history he had obtained from the mother before operating, explaining to the jury that "any time a child is born with a congenital anomaly, more and more we are coming to realize that there is a cause for many of these problems, and that the cause is not found so much by looking at the baby, though it does help us with a few of the cases, but the cause is found by eliciting a very accurate and complete history of the mother's prenatal course, or of her pregnancy, because these problems develop while the mother is carrying the child. And so I also take a very complete history from the mother. And I did." Nevertheless, several weeks after the operation he still expressed the opinion that the problem occurred one to three months before surgery. Further, a pathologist's report suggested to him that "this probably occurred no sooner than two to three weeks, or four weeks, five weeks, before the time the baby was born."[7]

Counsel takes issue with the court's statement in the memorandum opinion that if Sylvia "had sustained the twisted intestine at the time of the accident necrosis would have set in at that time and she would not have been born alive." This statement by the court is based on certain questions it asked of Doctor McNeil: "THE COURT: Doctor, there is reference in the medical records relating to Sylvia to necrosis and peritonitis, is that of any significance in indicating the time within which the difficulties commenced? THE WITNESS: It is to me, sir. It means that this process began shortly after birth, and if it had been going on for a long period of time the infant would have been born in very bad condition because the necrosis and peritonitis is the same as you get in a ruptured appendix. And no infant can live for a period of time with a ruptured appendix. THE COURT: What would have happened so far as the infection and the peritonitis is concerned if the

---

report. It was apparently among Doctor Brennan's notes which had been marked for identification only. It was never offered in evidence. About three months after the trial the parties stipulated that the doctor's notes could be withdrawn by plaintiff's counsel and returned to him. It is extremely frustrating to an appellate court to read a transcript in which counsel and the witness frequently refer to a writing, the whole of which is then before them, but which is not part of the record.

[7]He added: "So the pathology report indicates that this problem, this twisting, because of the extent it had gone, had probably occurred sometime between the second and third trimester of pregnancy, in that area." To the extent that this statement was in apparent conflict with his previous testimony, we must, in favor of the order appealed from, assume that the court believed the first, rather than the second version.

problem had commenced approximately four days before birth? THE WITNESS: The infant would have been born dead in about six months' gestation.''

We see nothing improper in these questions, despite counsel's suggestion to the contrary. Of course the reference to ''four days before birth'' in the last question is puzzling. Quite possibly this is a typographic error and the figure should be ''seventy-four,'' the precise number of days between the accident and the delivery. This would also explain Doctor McNeil's answer.[8] Be that as it may, the matter is, at worst, puzzling and certainly does not affect the propriety of the order.

The order granting a new trial ''on the issue of damages only'' is affirmed.

Stephens, J., and Aiso, J., concurred.

---

[8]Before the oral argument of this appeal we advised counsel of our suspicions with respect to the accuracy of the reporter's transcript. Counsel for defendant has filed a motion under rule 12(b) of the California Rules of Court to have the record corrected. It is supported by a declaration, signed by Doctor McNeil. Since we find it unnecessary to a proper disposition of the appeal to know whether the court said ''four'' or ''seventy-four,'' a reference under rule 12(c) would unnecessarily delay this matter. The motion is therefore denied as moot.