[Civ. No. 6801. First Appellate District, Division One.—March 3, 1930.]

A. AGUILAR, Respondent, v. RIVERDALE COOPER-ATIVE CREAMERY ASSOCIATION, Appellant.

W. M. Conley, Philip Conley and Matthew Conley for Appellant.

Ray W. Hays for Respondent.

THE COURT.—Respondent, an employee of one Dr. Goodrich, was performing certain work for his employer in a drier on premises belonging to appellant, and while doing so his hand came in contact with a revolving fan and was severed. Thereafter he brought this action for damages against appellant, claiming that his injuries were proximately caused by the defective and dangerous manner in which the fan was constructed and allowed to be operated. The trial took place before a jury, which rendered a verdict in respondent's favor, and from the judgment entered thereon this appeal was taken. A reversal is sought on a number of grounds, among those urged being that according to respondent's own testimony his injuries were brought about as a result of his own carelessness. But the first question presented for determination is whether respondent was upon appellant's premises as an invitee, as he claims, or as a bare licensee, as contended by appellant; ▮ for if his status was that of a bare licensee he is barred from recovery because, in that capacity, he assumed all the risks attached to the condition of the premises or which were incident to the operation of the business conducted thereon, and appellant owed him no duty except to refrain from doing him wilful or wanton injury (*Lindholm* v. *Northwestern Pac. R. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033], and cases cited therein) ; and no such injury is claimed or established.

Respondent entered the premises under the following circumstances: Appellant was engaged in the business of producing, manufacturing and selling dairy products. One of its plants was located at Riverdale, and among the different products dealt with was casein, which it prepared for the market by putting the same through a drying process in a drier built for that purpose inside one of the larger creamery buildings on the premises. The drier at this plant had not been operated, however, for about two years. Dr. Goodrich was a grower of prunes, and during the month of December, 1927, had on hand a crop of fresh fruit which he was unable to sun-dry. He therefore phoned to the foreman of appellant's Riverdale plant, a man named Jorgensen, and requested permission to cure the prunes in the Riverdale casein drier. Jorgensen at first declined to grant the request, but finally consented upon the distinct understanding and agreement with Dr. Goodrich that the latter would operate the drier and do all of the work connected with the drying of the prunes with his own men, and at his own expense, and that there would be no charge to him for the courtesy extended. Thereupon Jorgensen left orders with his men to clean out the drier and connect up the electric motor which propelled the drier fan. On the following Friday, Dr. Goodrich's truck, which was being driven by one of his men, arrived at the plant with the first load of prunes. The driver was accompanied by respondent and a fellow-employee named Massias. After the prunes were unloaded they were spread on trays by respondent and Massias, and two of appellant's men who happened to be working at the creamery building at the time, but in no way connected with the operation of the drier, voluntarily and without being authorized or requested so to do by their superiors, explained to respondent and Massias how to stack the trays on small hand trucks and wheel them into the drier. It took respondent and Massias until 10 o'clock that night to place all the prunes in the drier, after which they left the premises and did not return until the following Monday morning. During their absence two of appellant's men, observing that all of the trays had been stacked on one side of the drier, voluntarily moved part of them to the other side. On Monday morning more prunes arrived, and, after removing from the drier some of those already cured,

respondent and Massias proceeded to place the fresh fruit therein. Shortly after the noon hour they were wheeling the third truck-load of trays into the drier, and while going through a passageway five feet wide in front of the fan, which was six feet in diameter and set just beyond a circular opening of the same dimensions in the southerly wall of the drier, but neither guarded nor screened, respondent, who was in the rear of the truck shoving it, stooped to brace his shoulder and knee against the stack of trays, and in doing so extended his hand out behind him and into the blades of the revolving fan, and his hand was completely severed. Respondent admitted that while working in and about the drier he was fully aware of the location of the fan and that it was constantly in operation; that it made a noise while running and that he had passed in front of it twelve times on Friday and no less than six times on Monday before the accident happened; and besides, the revolving fan caused a constant draft through the drier room. His only explanation of the accident was that when he extended his hand behind him he did not realize how close he was to the fan.

■ Whether a person entering the premises of another bears the legal status of an invitee or of a bare licensee depends upon the nature of the business which brings him on the premises, and before such person can be given the legal standing of an invitee it must appear that he has entered the premises at the express or implied invitation of the owner or occupant thereof. ■ If it be shown that his purpose in so entering was one of common interest or mutual benefit to the owner or occupant and himself, or was in connection with the former's business which was there being carried on, an invitation is implied. But if it be shown that he stood in no contractual relationship with the owner or occupant, and that he was there for purposes purely of his own or of a third party which had no relation whatever to the business of the owner or occupant, and in which the latter had no interest, beneficial or otherwise, he is deemed in law to be a bare licensee (*Means* v. *Southern California Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001]; *Lindholm* v. *Northwestern Pac. R. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033]; *Bush* v. *Weed Lumber Co.*, 63 Cal. App. 426 [218 Pac. 618]; *Herzog* v. *Hemphill*,

7 Cal. App. 116 [93 Pac. 899]; *Grundel* v. *Union Iron Works*, 141 Cal. 564 [75 Pac. 184]; *Coburn* v. *Village of Swanton*, 94 Vt. 168 [109 Atl. 854]; *L. E. Meyers Co.* v. *Logue's Admr.*, 212 Ky. 802 [280 S. W. 107]; *Walker* v. *Nona Mills Co.*, 151 La. 738 [92 South. 318]; *Forbrick* v. *General Elec. Co.*, 45 Misc. Rep. (N. Y.) 452 [92 N. Y. Supp. 36]; 1 Thompson on Negligence, 156; 20 R. C. L. 69).

The application of the foregoing legal principles to the situation in the case before us clearly demonstrates that it possesses none of the elements essential to establish respondent's status as an invitee, for admittedly he did not enter appellant's premises on any mission connected with appellant's business, nor in which the latter had any common interest; nor did he go there as a result of any enticement, allurement or inducement, nor in response to any invitation, on appellant's part. On the contrary, he was there admittedly as the employee of a third party, and for the purpose of performing work in which the latter alone was interested. His status was therefore clearly that of a bare licensee, and as such he assumed all the ordinary risks and perils attached to the condition of the premises, and the manner in which the same or the business conducted thereon were maintained and operated. Under such circumstances there was no legal duty imposed upon appellant to keep its premises in a safe condition, the measure of its liability for injury to him being limited to a wanton or wilful injury (*Giannini* v. *Campodonico*, 176 Cal. 548 [169 Pac. 80]; *Means* v. *Southern Cal. Ry. Co., supra*), and as stated no such injury is claimed or established. Nor does the fact that appellant granted respondent permission to come upon the premises affect respondent's status as a bare licensee, for it is well settled that mere permission of an owner to enter and use a portion of his premises does not of itself amount to an invitation (*Herzog* v. *Hemphill, supra;* 8 Thompson on Negligence, p. 144, sec. 949, notes 30 and 31; *Briscoe* v. *Henderson Light Co.*, 148 N. C. 396 [19 L. R. A. (N. S.) 1116, 62 S. E. 600]; *Coburn* v. *Village of Swanton, supra*).

We have examined the authorities cited by respondent, but find no rule of law stated therein which is at variance with the views hereinabove expressed. Several of the cases cited deal merely with the rule of liability of an owner where

the injured party is admittedly an invitee and not a bare licensee, and such is not this case. The others are cases wherein the question arose as to whether the injured party was an invitee or a licensee, but it will be found that in all of those cases wherein such party was held to be an invitee there was present at least one of the elements above mentioned which is essential to establish such status.

The conclusion we have reached upon the issue as to respondent's legal status at the time he was injured makes it unnecessary to discuss or determine the other points raised by the appeal. The judgment is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 2, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1930.