[Civ. No. 8119. First Appellate District, Division One.—July 16, 1934.]

LAWRENCE J. LESLIE, Respondent, v. THE CITY OF MONTEREY (a Municipal Corporation) et al., Defendants; COAST VALLEYS GAS AND ELECTRIC COMPANY (a Corporation) et al., Appellants.

Thomas J. Straub, John C. Wood and W. R. Dunn for Appellants.

Snook & Snook & Chase and Stanford G. Smith for Respondent.

Brobeck, Phleger & Harrison, Roy V. Reppy and E. W. Cunningham, as *Amici Curiae* on Behalf of Appellants.

JOHNSTON, J., *pro tem.*—This action was brought by Lawrence J. Leslie against the City of Monterey and certain of its officers, Coast Valleys Gas and Electric Company, a corporation, and Pacific Gas and Electric Com-

pany, a corporation, for damages which he received for personal injuries on February 12, 1928, at the baseball park in the City of Monterey, California. Judgment of nonsuit was granted in favor of the City of Monterey and its officers. Appellants herein also made a motion for nonsuit but the same was denied by the trial court. The interest of the appellants being identical, the jury rendered a verdict in favor of the plaintiff and against the appellants in the sum of $75,000, which, upon motion for a new trial, was reduced by the court to the sum of $50,000.

At the time of the accident, the City of Monterey owned and operated a baseball park bounded on the east by Figueroa Street, on the west by Adams Street, on the north by Franklin Street and on the south by Pearl Street. As a certain coast league baseball team was coming to Monterey to start its practice season, the City of Monterey adopted plans and awarded a contract for the erection of a fence and a backstop surrounding the said baseball park. The contract to erect the fence and the backstop was awarded to Fred McCrary, a contractor, in whose employ the plaintiff was when the accident occurred. The fence on the east side of the ball park had been moved five feet onto Figueroa Street from the property line, and directly under certain power transmission wires of defendants carrying 22,000 voltage. After the fence had been completed, a backstop was erected along it consisting of wire netting and steel pipes forty-six feet long and four inches wide. Holes six feet deep had been dug, in which the pipes were to be inserted. At the time of the accident, the first of the steel pipes was being erected on Figueroa Street on the southwest corner of the ball park. Steel pipes had been erected previously on the same day on Adams Street, or the west side, where there were no wires. At the time of the accident, the workmen were pulling up the first pole by means of rope running through a block and tackle attached to the pole and attached at the other end to a truck, the hole for the same having been already dug. The ground was moist and a pile of dirt was located near the hole from which it had been removed. As the steel pole was being raised, Manuel Rogers, another man employed in the construction of the fence and backstop, was at the top of the scaffolding for the intended purpose of guiding the pipe at the top,

and another man was directly below him to assist therein. Joe Doug, the foreman, whose duty it was to wire the pipe to the fence as soon as it was in position, was on the top of the fence below the two last-mentioned men. Plaintiff Leslie, one Fancher and Charles Tibbs were on the ground to guide the pipe at the bottom, and when the same was in a perpendicular position they were to lift it over the pile of dirt and into the hole. Plaintiff claims that he knew nothing about electricity, nor that the wires above him were high tension wires, nor had anyone given him any warning or instructions regarding the same, and defendant Pacific Gas and Electric Company, a corporation, is not shown to have had any control or direction in such construction. Both plaintiff Leslie and Fancher had hold of the pipe near the bottom as it neared a perpendicular position. As the bottom of the pipe reached the pile of dirt located nearby, it was necessary for Leslie to release his grip on the pipe and walk around Fancher to assist him in placing the pipe in the hole. Plaintiff Leslie was directly behind Fancher, and Tibbs was a little to one side. Fancher still had hold of the steel pipe. Just as Leslie released his grip on the pole, the pipe came in contact with the second 22,000-volt line, and as the pipe was grounded at the bottom a tremendous short circuit occurred. A wire cable, to be used for suspending the wire netting, was attached to the pipe at the top and was coiled at the base of the pipe near the pile of dirt.

As soon as the pipe came in contact with the wire, a big burst of flame came out of the bottom of the steel pipe and the pipe seemed to vibrate. Fancher stiffened up and apparently was killed instantly. As Fancher appeared to be stepping back when he was stiffening up, plaintiff Leslie put out his left hand to protect himself. Both fell to the ground. Fancher was still in contact with the coiled wire, which was emitting sparks along its entire length. In addition to this, both were in contact with the damp ground. Just as Rogers and Doug jumped to the ground, what seemed to them to be a second shock came through the wires and pipe. The shocks were alleged to have been caused by an employee at the defendants' substation in Salinas reclosing the circuit. At least two reclosings of the circuit are claimed to have taken place, and the current of electricity

had been driven through Fancher's body twice before he and plaintiff Leslie fell to the ground. The men on the scaffolding and Doug jumped to the ground. Doug grabbed Leslie's hand to pull him but, realizing everything was wet, let go just as another report came. The current apparently threw Doug to the ground. After the shock, one of the men got a board and held up Leslie's arm. Doug threw a rope over his arm and pulled him loose. Leslie, who was believed by the workmen to be dead, was taken to the hospital, where he remained in a very painful and critical condition for several weeks.

Among other things, appellants argue that their motion for nonsuit should have been granted because they cannot be held legally responsible for the injuries received by plaintiff Leslie, for the reason that the latter was a trespasser as to them. ■ It is a well-settled principle of law that negligence can exist only if there is some duty or obligation, which must be performed by the party charged with negligence in favor of the injured party. (*Schmidt* v. *Bauer*, 80 Cal. 565, 568 [22 Pac. 256, 5 L. R. A. 580]; *Jacobson* v. *Northwestern Pac. R. Co.*, 175 Cal. 468, 472 [166 Pac. 3]; *Smelser* v. *Deutsche Evangelische, etc.*, 88 Cal. App. 469, 475 [263 Pac. 838].) Moreover, the party charged with lack of due care cannot be said to have been negligent as to the injured party unless it appears that the party charged with negligence owed to the injured party a duty of care. (*Dahms* v. *General Elevator Co.*, 214 Cal. 733, 737 [7 Pac. (2d) 1013].)

■ It is also a well-settled principle of law that the owner of property owes to a trespasser or licensee no duty to keep the premises in safe condition. (*Grundel* v. *Union Iron Works*, 141 Cal. 564, 566 [75 Pac. 184]; *Means* v. *Southern California R. Co.*, 144 Cal. 473 [77 Pac. 1001, 1 Ann. Cas. 206]; *Giannini* v. *Campodonico*, 176 Cal. 548, 550 [169 Pac. 80]; *Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal. App. 422, 429 [283 Pac. 353]; *Brust* v. *C. J. Kubach Co.*, 130 Cal. App. 152 [19 Pac. (2d) 845]; *Hall* v. *Southern California' Edison Co.*, 137 Cal. App. 449 [30 Pac. (2d) 1013].)

■ It appeared from the evidence that the appellant Pacific Gas and Electric Company, a corporation, owned a franchise, and under such franchise was permitted to main-

tain its wires at the time and place mentioned in the pleadings, and that as such owner and possessor of such franchise owed no duty to a trespasser or licensee save and except it must refrain from such acts or conduct as might result in a wilful or wanton injury to a trespasser or licensee. On the other hand, the property owner or owners of the franchise owe to an invitee the duty to keep the premises in a safe condition. ██ Consequently it becomes important to determine from the facts which were developed by the evidence, whether it can be said that a jury could have properly found that plaintiff was an invitee.

We think it must be conceded that, as to the appellants, plaintiff had not been expressly or impliedly invited to enter upon their property. There is no evidence which in the slightest degree indicates that there was an express invitation, nor is there any evidence that there was an implied invitation. The plaintiff was employed by a contractor and not by the appellants. The work upon which he was engaged cannot fairly be said to have been beneficial to the appellants herein, or to have been done at their request. It was beneficial only to the City of Monterey and to the contractor who performed the work. The appellants were not at all interested in the construction of the said fence and backstop, nor was there any contractual relation between the appellants and plaintiff, or plaintiff's employer. We think, therefore, the evidence clearly indicates that the work on which plaintiff Leslie was engaged at the time the injury occurred bore no relation to the business of the appellants, nor were they interested therein. (*Aguilar* v. *Riverdale C. C. Assn.*, 104 Cal. App. 263 [285 Pac. 889]; *Hall* v. *Southern California Edison Co., supra.*)

Under the authority of the case of *Hall* v. *Southern California Edison Co., supra,* it follows that the trial court erred in denying appellant's motion for nonsuit.

██ Respondent further claims in support of the judgment that, regardless of whether plaintiff was or was not injured by the first shock, defendants were guilty of negligence by reason of the wanton reclosure of the circuit breakers without any investigation having been made and without any attempt to determine the reason and location of the trouble. Plaintiff being a trespasser, and there being no evidence to show that defendants had actual knowledge

of plaintiff's peril, no liability on the part of the defendants could possibly arise under the contention.

For the reasons stated, the judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.