[Civ. No. 7608. Third Dist. Nov. 7, 1949.]

DOLLY ELMA STROTHER et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY et al., Respondents.

[Civ. No. 7609. Third Dist. Nov. 7, 1949.]

CLIFFORD L. STROTHER, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY et al., Respondents.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellants.

Gerdes, Dunn & Peterson, Grayson Price, J. M. McPherson, Charles H. Andrews and Russell A. Harris for Respondents.

THOMPSON, J.—Plaintiffs have appealed from judgments, in two consolidated cases, which were rendered pursuant to orders sustaining general demurrers to the amended complaints with leave to amend the pleadings. The demurrers were sustained on the ground that the complaints fail to state facts sufficient to constitute causes of action. Plaintiffs refused to again amend their complaints and the actions were dismissed. The suits were brought to recover compensation for personal injuries, and for the death of a passenger and for property damages resulting from the collision of an airplane with high power wires maintained by the defendant Pacific Gas and Electric Company on its own property adjacent to Patrick Air Field near Chico.

Each complaint is couched in six counts. The first complaint was filed by Dolly Elma Strother, the surviving wife of William Alexis Strother, a passenger in the airplane, who was killed, and the children of the spouses. The other complaint was filed by Clifford L. Strother, the operator of the private airplane which was involved in the accident. The Pacific Gas and Electric Company is charged with negligence in constructing and maintaining on its property near the airport the poles and high power wires, contrary to the rules of the United States Civil Aeronautics Administration, and in failing to display signs or to give warning of the danger of

said wires. The codefendant, Garrison Patrick, individually, as manager and operator of Patrick Air Field, and as executor of the estate of Bee Compton, deceased, owner of the airfield, is likewise charged with negligence in failing to display signs or to warn plaintiffs or the patrons of the airport of the danger of said wires and poles.

The complaints allege that for more than 17 years Patrick Air Field has maintained its airfield in the vicinity of Chico 500 feet in width and 3,400 feet in length and extending southerly from a line parallel to Hagan Lane which is 45 feet north of the northern boundary of said airfield; that during all of said time that airport has been commonly used by public and private airplanes as a landing field; that nine years subsequent to the establishment of said airport the defendant Pacific Gas and Electric Company constructed upon its easement and thereafter maintained a high power system of electric wires and poles, parallel to the northern border of the field and about 40 feet distant therefrom, consisting of "two wooden poles approximately 500 feet apart," upon which "Three electric high-tension wires" were strung "26 feet above the ground"; that both of said defendants knew of the dangerous proximity of said wires to the landing field, and that plaintiff, Clifford L. Strother, and other operators of airplanes were accustomed, for more than nine years, to fly in the airlane above the Pacific Gas and Electric Company's property in landing and departing from said field; that defendants failed and neglected to display signs or to use "safety measures of any kind" or to warn plaintiffs of said danger; that the Patrick Air Field and the public acquired prescriptive rights to the airlane over the adjoining property of the Pacific Gas and Electric Company. It was further alleged that plaintiff, Clifford L. Strother, who was operating his private airplane in which his father, William Alexis Strother, was riding as a passenger, in attempting to land, from a northerly direction in said airlane, at about 3 o'clock p. m. of April 23, 1946, collided with said high power wires and crashed on the airfield as a result of which his father was killed, he was seriously injured, and his airplane was demolished. It was not alleged that the operator of the airplane was free from negligence, or that he had no knowledge of the presence of the wires.

The complaints fail to state facts sufficient to constitute causes of action based on prescriptive title to the airlane above the land of the Pacific Gas and Electric Company, which

space was beneficially used and occupied by the wires and poles of that public utility company. At the time of the accident plaintiff's airplane was trespassing on the property of the said defendant. The defendants owed no duty toward plaintiffs to display signs or to warn them of the danger of the wires and poles which were erected and maintained on private property, other than that of the airport. Nor may the appellants assert prescriptive rights to the airlane across which the high power wires were strung and maintained, for that space to an elevation of 26 feet above the ground was reasonably and beneficially used for the enjoyment of that owner's property rights, and the plaintiffs were trespassers thereon at the time of the accident. Being trespassers, the owner of the land owed plaintiffs no duty to warn them of the hazard of the wires. (*Leslie* v. *City of Monterey,* 139 Cal.App. 715 [34 P.2d 837] ; *Rochester G. & E. Corp.* v. *Dunlop,* 148 Misc. 849 [266 N.Y.S. 469] ; *Capitol Airways, Inc.* v. *Indianapolis Power & Light Co.,* 215 Ind. 462 [18 N.E.2d 776] ; *Langazo* v. *San Joaquin L. & P. Corp.,* 32 Cal.App.2d 678, 689 [90 P.2d 825].) In the case last cited this court said:

" ' "... A landowner may, in fact, reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with. His right to protect his property and the use of his property is paramount. . . . The exemption of the landowner from liability as to trespassers . . . is necessary to secure him the beneficial use of his land; . . .." ' "

It appears from the pleadings that even though prescriptive rights to the airlane over the property of the Pacific Gas and Electric Company may have been acquired by adverse user of the space occupied by the wires, which is unnecessary for us to determine, that right of way was subsequently abandoned and lost by the construction and use by the owner of the wires and poles on its own land without opposition or interference for a period of more than five years. When the claimant to the adverse use of a right of way ceases to use it or abandons his claim of right, and the owner of the land to which it is incident occupies and uses it without objection for a period of five years or more, the effect of such discontinuance of use is just as conclusive against the adverse title thereto as though the claimant had been evicted by legal process. The owner's possession and title to the easement is thereby restored. (Civ. Code, § 811, subd. 3 and 4; *Glatts* v. *Henson,*

31 Cal.2d 368 [188 P.2d 745]; 2 C.J.S. § 146, p. 708; 17 Am.Jur. § 143, p. 1028.) Section 811 of the Civil Code provides in part:

"A servitude is extinguished:

. . . . . . . . . . . . .

"(3) By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise; or,

"(4) When the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment."

■ Assuming that the federal government has sovereignty of the air throughout its domain, above the elevation to which a property owner acquires necessary and beneficial use of his land, it is doubtful whether adverse possession or prescriptive rights in such public domain could be secured. (2 C.J.S. § 12a, p. 524; Civ. Code, § 1007.) In the text found in 2 Corpus Juris Secundum, *supra,* supported by authorities, it is said: ". . . One may not acquire title to any part of the public domain by prescription or adverse possession."

We conclude that the complaints fail to state causes of action based on asserted prescriptive right to the airlane in question, and that the affirmative allegations of the complaints refute that claim.

■ The appellants contend that the complaints allege negligence in constructing and maintaining the high power wires and poles without notice to the Civil Aeronautics Administration, and without placing "markings and warnings" thereon, contrary to the rules adopted in 1938, "as amended . . . by 'Regulations and Standards for the Protection of Air Navigation—Obstruction Marking Manual of the United States Department of Commerce, Civil Aeronautics Administration, August 1, 1943." The pleadings do not quote or affirmatively state the rule relied upon, but allege as mere conclusions that the rules require "certain notices" of construction to be given and that warnings "must be placed thereon." We were furnished no copy of the rules, but have secured a copy of the manual referred to. ■ While it is true that courts will take judicial notice of rules adopted by departments of the United States, Code Civ. Proc., § 1875, par. 3; *Parker* v. *James Granger, Inc.,* 4 Cal.2d 668, 677 [52 P.2d 266]), that does not obviate the necessity of affirmatively stating facts as distinguished from mere conclusions of the pleader regarding the effect of foreign statutes or other laws.

(note, 134 A.L.R. 574.) In the headnote last referred to, which is supported by numerous authorities from various jurisdictions, it is said:

"It is generally held that averring the pleader's conclusions as to the legal effect of the foreign statutory or other law, is an improper manner of pleading it. The pleader must state what the foreign law or statute provides in substance, and not his conclusion as to its legal effect, or what the rights of the parties are under it."

In *Redwood Theatres, Inc.* v. *City of Modesto,* 86 Cal.App.2d 907, 917 [196 P.2d 119] (in which a hearing was denied), it is said the mere allegation of conclusions of law is an insufficient statement of ultimate facts, which are not waived by the filing of a demurrer. This court there said:

". . . The mere statements that the taxes imposed by ordinance number 772 are discriminatory, a double taxation, arbitrary, capricious or confiscatory, are merely conclusions of law. They do not constitute allegations of ultimate facts. Such conclusions are not admitted as facts by the filing of the demurrer. (*Meyer* v. *Board of Public Works,* 51 Cal.App.2d 456, 470 [125 P.2d 50].) In *Pacific Railways Advertising Co.* v. *Conrad,* 168 Cal. 91 [141 P. 916], the Supreme Court said: 'It is only when such an ordinance is clearly unjustly oppressive and discriminatory that the power of a court may be invoked to right the wrong.' Such allegations must be adequately pleaded to constitute a good cause of action on those grounds." (See *Callahan* v. *Broderick,* 124 Cal. 80 [56 P. 782]; *Ede* v. *Cuneo,* 126 Cal. 167 [58 P. 538].)

 With reference to appellants' claim that the defendants were negligent in failing to notify the United States Civil Aeronautics Administration of the Pacific Gas and Electric Company's intention to construct the poles and wires, assuming that said omission was properly pleaded, we are referred to no rule or law requiring that notice *which existed at the time the poles and wires were erected.* The complaints allege that the Patrick Air Field was established 17 years prior to April 23, 1946, when the accident occurred, and that nine years later the poles and wires were erected. It therefore appears that the poles and wires were erected in April, 1938, eight years before the accident occurred. By reference to the Civil Aeronautics Administration Manual, upon which the appellants rely, which is dated "August 1, 1943," we find that section 525.1, requiring notices to be given of the "con-

struction or alteration of any structure'' within a stated distance of airfields, under specified conditions, ''shall become effective on November 1, 1941.'' That rule has no application to these cases because it did not become effective until some three years after the poles and wires were constructed.

There was no allegation that the Patrick Air Field or the plaintiffs were engaged in interstate traffic, and therefore the federal rules, even if they were in effect at that time, would have no bearing on these cases. We are directed to no statute or rules in California which require notice or markings of monuments, poles or structures in the vicinity of airfields.

The United States Statutes of 1926, to which reference is made (U.S. Stats. 1925-1927, [44 Stats.] p. 270; 52 Stats. 1007, 49 U.S.C.A. § 551; and 52 Stats. 1026, 49 U.S.C.A. § 671), do authorize the United States Civil Aeronautics Board to ''establish air traffic rules governing the flight of, and for the navigation, protection and identification of, aircraft,'' but that act *contains no rules* for the giving of notice of the building of structures or the marking thereof. The first rules actually adopted by the federal government to that effect, to which our attention has been called, are contained in the manual previously referred to, which is dated August 1, 1943, several years after the wires and poles complained of were erected. Those rules therefore have no application to these cases, and afford the appellants no relief.

Nor has the State of California adopted any such rules. (*Parker* v. *James Granger, Inc., supra*; Stats. 1929, p. 1874; Stats. 1939, p. 1494; Stats 1947, p. 2927.) It is true that the last cited statute authorizes the California commission to adopt rules consistent with the federal legislation governing aeronautics. But our attention has been called to the adoption of no such California rules, authorized by the statute. Moreover, section 12(b) of the act of 1947 provides that temporary rules may only be promulgated by the commission, after public hearings and notice, and the adoption thereof by the Legislature.

It has been uniformly held that the police powers of the states were not surrendered to the federal government, but were retained by the states to be exercised in all intrastate affairs. (5 Cal.Jur. § 103, p. 689; 16 C.J.S. § 177, p. 545; 11 Am.Jur. § 255, p. 986.) The regulation of the use of private property in intrastate transactions would appear to vest exclusively in the legislative authority of the states, as our Supreme Court said in the Parker case, *supra.*

It is true that paragraph III of the first counts of the complaints allege that "at all times mentioned said Patrick Air Field was approved by, and was under the supervision of, the Civil Aeronautics Authority." In support of that allegation we are supplied with a photographic copy of a list of airfields to which the Rules of the United States Civil Aeronautics Administration purport to apply, including therein "Chico (Patrick) 2 sse, 189." That list, which is dated November 1, 1946 (after the accident occurred) states that it applies to "The regulations of the Administrator of Civil Aeronautics, Part 525," and includes a requirement that "notice be given of certain construction or alteration of structures along or within 20 miles of a civil airway." It states nothing regarding the marking of "towers, poles, smokestacks and similar structures." But, with reference to the marking of such towers, poles, etc., we find, by reference to the "Obstruction Marking Manual," Part II, dated August 1, 1943, previously referred to, that the following federal rule was included:

"Towers, poles, smokestacks and similar structures which present a hazard to air commerce should be painted throughout their height with alternate bands of international orange and white."

However, there is no allegation in the complaints in these cases that the Patrick Air Field or plaintiffs were engaged in interstate flights, traffic or service. All that the complaints allege with respect to the nature of the use of the field in question is that Patrick Air Field "was used by members of the general public as an airport for the landing and taking off of airplanes and for the ground maintenance thereof," for a period of "seventeen years" prior to April 23, 1946, when the accident occurred. Certainly that may not be construed as an adequate allegation that either the Patrick Air Field or plaintiffs were engaged in interstate air traffic. The statement that the Patrick Air Field "was under the supervision of the Civil Aeronautics Authority" is a mere conclusion. No facts are alleged which would confer upon the federal authorty the right to regulate that airfield in California or adjacent properties of private owners in strictly intrastate transactions.

Under the pleadings, the federal rules have no application to these cases. That principle was determined in the Parker case, *supra*, in which the Supreme Court, under similar circumstances, said:

" 'During presentation of their cases plaintiffs offered in evidence a document issued by the department of commerce of the United States containing air commerce regulations relating to the licensing of aircraft and rules of air traffic. The court sustained an objection to its introduction into evidence made on the grounds that the same was incompetent, irrelevant and immaterial. The ruling of the court was correct. . . . 'We have examined the regulations offered and find nothing therein of which the court was charged with judicial knowledge and which the court was called upon to declare to the jury. *The flight of the planes herein mentioned was intrastate, and under the federal Constitution and the California Aircraft Act enacted in 1929 the state of California was vested with exclusive power to prescribe air traffic rules to govern the operation of aircraft in flying in purely intrastate flights.* No such rules had been made by the legislature when the accident herein occurred, and the conduct of the pilots and others involved in the accident would be measured and judged only under the general law and rules of negligence pertinent and applicable to the case.' " (Italics added.)

On principle, the foregoing case is conclusive of the question as to whether the complaints in this case state facts constituting the alleged violation of the United States Civil Aeronautics Administration Manual of Rules. Such rules, if any existed at the time the accident occurred, are incompetent because there is no allegation that the Patrick Air Field ·or the plaintiffs were engaged in *interstate* commerce or traffic. If they were not so engaged then the federal rules have no application. The State of California would then have "exclusive power" to adopt and promulgate such rules and regulations, which it has never done. No California rules or legislation on that subject are pleaded or relied upon. Our attention is called to none in existence.

The appellants contend that the federal government has exclusive sovereignty of the air throughout the United States, its territories and possessions, and may exercise control of air traffic therein whether it consists of interstate or intrastate traffic. (99 A.L.R. 173; 69 A.L.R. 316; 2 C.J.S. § 3, p. 902.) We concede that the United States has sovereignty over the higher airspace within its domain, and that it may reasonably regulate air traffic therein regardless of whether it is interstate or intrastate traffic. But that sovereignty of the air does not authorize the federal government, in the guise of police powers, to interfere with the lower air-

space over a private owner's property, the use of which is intrastate and which is necessary and beneficial to the reasonable enjoyment of his land. Certainly, the use of 26 feet of space above the ground for the construction and maintenance of high power wires and poles to be used in its business by a public utility corporation which owns the land, is a reasonable, beneficial and necessary use of the property. The regulation of such private property is vested in the Legislature of the State of California, as the Parker case, *supra*, states. Those police powers have never been transferred to the federal government. The regulation of all strictly intrastate business is retained by the State of California.

In Fixel on the Law of Aviation, 3d edition, page 71, section 62, it is said:

"1. The ownership of a property right in airspace above a landowner's property, extends to the usable airspace above his property, . . . . The landowner is entitled to the use of such airspace as is necessary to the enjoyment of the use of the surface without interference by the flight or passage of aircraft.

. . . . . . . . . . . . . . .

"7. An owner of land would have an action for trespass in cases where an airplane made physical contact with his land or any structure or person thereon, thereby causing damage, . . . ."

In 1 Restatement of the Law of Torts, page 460, section 194, it is stated that the right of aircraft to invade the airspace above the land of another person is dependent upon the reasonable operation of such aircraft in such manner and "at such a height as not to interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it." Under subdivision "g" of that section it is said:

"Under the rule stated in this Section, only those flights are privileged which are conducted at such a height as not unreasonably to interfere with the possessory interest in the land. Thus, a flight, although otherwise conducted in a reasonable manner, for a legitimate purpose, and in conformity with all applicable local regulations, if conducted at such a low height as to cause reasonable fear or substantial annoyance to occupants of the land . . . or to endanger the surface of the land, or persons, trees, *structures or other things thereon,* or to interfere with the possessor's legitimate use of the air space, is not within the privilege."

 Apparently the doctrine of limiting prescriptive rights to the beneficial use enjoyed by a landowner is applied to the use of the airspace above a property owner's land. It may be true that an unnecessary or improper use of the airspace above the owner's land may not secure to him a vested property right thereto. But a proper and beneficial use of the airspace above an owner's land may not be interfered with except for necessary police regulation in the interest and for the safety and protection of the public. That police power in intrastate air traffic is vested in the state and not in the government, except for the benefit of Army and Navy airports and interstate air traffic under the interstate commerce clause of the Constitution.

Regarding that federal supremacy of aviation within the states, territories and possessions of the United States, it is said in Fixel on the Law of Aviation, at page 20, that the Federal Air Commerce Act of 1926 is accepted as the "law of the land, except as to such matters as are not covered by the Federal law, or which are secured to or granted to the several states." That text reads:

". . . The latter in general are such matters as come under the police powers of the states; or where in some instances, it is claimed by states that they have power and authority to regulate the navigation, registration and licensing of aircraft where such aircraft engage in pleasure or commercial flights solely within the boundaries of a state, or where, in case of an intrastate commercial flight, the aircraft does not transport articles of commerce as a part of a through carriage between points in different states."

We must assume the last mentioned powers remain in the state.

Congress declared that the United States possesses sovereignty within the states and its possessions over the navigable "air space" therein. (44 Stats. 572, 49 U.S.C.A § 176.) The term "navigable airspace" is defined as that space which is "above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority." (44 Stats. 574, 49 U.S.C.A. § 180.) In the case of *United States* v. *Causby,* 328 U.S. 256 [66 S.Ct. 1062, 90 L.Ed. 1206], upon which the appellants rely, it was held that repeated flights of government four-motored bombing planes over the poultry farm of Causby near an airport at Greensboro, North Carolina, at a height of 83 feet above the ground, frightening his chickens and causing the death of many of them, constituted a taking of prop-

erty for which compensation for damages was due to the owner under the Fifth Amendment to the United States Constitution, which provides in part that no one shall be deprived of property without due process of law, ''nor shall private property be taken for public use, without just compensation.'' The appellants in these cases contend that the Causby case is authority in support of their claim of prescriptive rights to the airlane acquired by flying over the property of the Pacific Gas and Electric Company. But title by prescription was not an issue in that case. It related only to the question of compensation for damaging the property of the owner by flying bombing planes over the property at such an altitude as to frighten his chickens and cause the death of many of them. The court said that, under the circumstances, ''There would be a taking of property compensable under the Fifth Amendment. It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken. . . . The owner's right to possess and exploit the land—that is to say, his beneficial ownership of it—would be destroyed.'' Compensation in that case was not awarded on the theory that a rule of the Civil Aeronautics Authority had been violated. The court said in that regard:

''The fact that the path of glide taken by the planes was that approved by the Civil Aeronautics Authority does not change the result. The navigable airspace which Congress has placed in the public domain is 'airspace above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority.' 49 USCA sec. 180, 10A FCA title 49, sec. 180. If that agency prescribed 83 feet as the minimum safe altitude, then we would have presented the question of the validity of the regulation. But nothing of the sort has been done.''

Regarding the property owner's right to the enjoyment and control of that portion of the air above his property which is reasonably adaptable to the beneficial use of his property, the court further said in the Causby case:

''We have said that the airspace is a public highway. Yet it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and fences could not be run. . . . The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land.''

The preceding language would certainly justify the construction of the wires and poles on the owner's land in the present cases. It is inconsistent with appellants' contention that they acquired prescriptive use of the airway over the owner's land.

The essential principles upon which the appellants in this case rely were determined adversely to them in the case of *Capitol Airways, Inc.* v. *Indianapolis Power & Light Co.*, *supra*, in which the facts were similar to those of the present cases. The appellant, Capitol Airways, owned and operated a commercial airfield near Indianapolis. The appellee, Indianapolis Power & Light Company, a public utility corporation, acquired a right of way adjacent to and parallel with the airport, across a roadway, 100 to 250 feet from the boundary of the airport, and constructed thereon steel towers 90 feet in height and 400 feet apart, upon which it placed high power wires carrying 132,000 volts of electricity. The airport company claimed that the towers and wires were highly dangerous to aircraft flying to and from that field, and that they constituted a taking of private property and would result in the destruction of their business. Suit for damages in the sum of $150,000 was commenced. A demurrer to the complaint was sustained. From the judgment which was accordingly rendered, the Capitol Airways appealed. On appeal the judgment was affirmed. It was determined that the Airways Company had no cause of action. The court held that the power company had a right to maintain the high power wires and towers; that it owed no duty to protect the public against dangers that could not be reasonably anticipated, or to keep the property safe as against trespassers who might strike the wires in operating their airplanes in taking off or landing on the airfield. The court said:

". . . If the statute requires more than common-law care, it is to be strictly construed against unlawfulness. Except for the proximity of the flying field, it would hardly be suggested that the wires on such a power line are so located that the general public is 'liable to come into contact with the wire or wires.' Members of the public might come into contact with the wires *by trespassing* upon the land and climbing the towers, but the statute is not for the protection of such.

". . . Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless

so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . . *The establishment of an airport upon the appellant's land in no way affected or limited the right of adjacent landowners to use their land in any manner and for any purpose for which it might have used it before.* Had the appellee chosen to erect flagpoles, factory chimneys, or tall buildings across the whole of its land, and several times as high as its power line, it was within its rights notwithstanding it might have entirely prevented the landing of airplanes at appellant's airport. . . .

". . . The appellee's power line interferes with none of the appellant's rights. It owes no duty to protect the public against dangers that cannot reasonably be anticipated. The owner of property is under no duty to keep the premises safe for a trespasser, who comes without enticement, allurement or invitation." (Italics added.)

We conclude that the court properly sustained the demurrers to the complaints in the present cases. The complaints fail to state causes of action. The judgments are affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied December 7, 1949, and appellants' petition for a hearing by the Supreme Court was denied January 4, 1950. Carter, J., and Schauer, J., voted for a hearing.