[Civ. No. 19653. Second Dist., Div. Two. Mar. 11, 1954.]

DOVIE ZOE FISHER, Respondent, v. GENERAL PETROLEUM CORPORATION (a Corporation) et al., Appellants.

Reynolds, Painter & Cherniss, Howard Painter, Richard C. Heaton, D. W. Woods, J. M. Jessen and Olive E. Boswell, for Appellants.

M. Arthur Waite and James C. Hollingsworth for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before a jury in an action to recover damages for the wrongful death of plaintiff's husband, defendants appeal.

Viewing the evidence as we must in the light most favorable to plaintiff (respondent) the essential facts are these:

On December 26, 1950, defendant General Petroleum Corporation entered into a writing with Southern California Gas Company reading in part as follows:

"Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee as hereinafter set out and contained, hereby grants to Grantee, subject to termination as hereinafter provided and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay, construct, maintain, oper-

ate, repair, renew, from time to time change the size of, and remove a pipe line for the transportation of oil, petroleum, gas, gasoline, water or other substances in, under, along and across that certain real property situate in the County of Ventura, State of California, and described as follows, to wit: (description of property).

"Said pipe line shall be installed in the location shown in red color on map number P-14055, dated November 17, 1950, attached hereto and made a part hereof.

"Grantee shall not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises.

"Grantee, in the exercise of the rights granted to it hereunder, shall not do or permit to be done any welding or operations involving sparks or flame within a distance of 300 feet from any oil or gas well, or oil, gas or gasoline container, or place of discharge to atmosphere of oil, gas or gasoline, whether located on the premises or on adjacent lands, without prior consent of Grantor, and then only subject to and in accordance with the provisions hereof and such other conditions as may be expressed in said consent.

"Grantee shall bury its pipe line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least eighteen (18) inches below the surface of the ground, and shall promptly and properly back-fill excavations made by or for Grantee on the premises.

"Whenever, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days after written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the lowering or prior to the reconstructing of said pipe line, as the case may be.

"Grantee and its employees and agents, at any and all times when necessary, shall have free access to the said pipe line, over such reasonable route as Grantor may designate or approve, for the purpose of exercising the rights hereby granted.

"The grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without

the written consent of Grantor first being had; provided, however, no consent shall be required in event Grantee assigns this agreement to a wholly owned subsidiary having assets in excess of One Million Dollars ($1,000,000). No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

"It is further understood and agreed that this agreement and the rights and privileges herein given Grantee shall terminate in the event that Grantee shall fail, for a period of one (1) year, to maintain and operate said pipe line.

"This agreement and all interest of Grantee hereunder, at the option of Grantor, shall forthwith terminate upon breach by Grantee of any of the terms or conditions hereof and the failure of Grantee to remedy the same within thirty (30) days after written notice from Grantor so to do.

"In the event of the termination of this grant of right of way Grantee shall thereupon, at its own expense and risk, remove all pipe and any other property placed by or for Grantee upon said land, and restore said premises as nearly as possible to the same state and condition they were in prior to the construction of said pipe line, but, if it should fail so to do within sixty (60) days after such termination, Grantor may so do, at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereon at the rate of ten per cent per annum, shall be paid by Grantee upon demand.

"Upon the termination of the rights hereby granted, Grantee shall execute and deliver to Grantor, within thirty (30) days after service of a written demand therefor, a good and sufficient quitclaim deed to the rights hereby granted. Should Grantee fail or refuse to deliver to Grantor a quitclaim deed, as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed, as herein provided, and terminating said grant shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against Grantee and all persons claiming under Grantee of the termination of said grant."

The privileges granted to Southern California Gas Company under the foregoing document were without consideration to defendant General Petroleum Corporation.

On the 12th of March, 1951, there existed on the General Petroleum property referred to in the above document, 65

subsurface pipe lines and said defendant owned and operated a well known as Barnard 29. This well was located in a general northerly direction from the right of way granted by General Petroleum to Southern California Gas Company for the laying and construction of a 20-inch gas line. The line running from Barnard Well No. 29 was three and one-half inches outside diameter and carried oil and casing head gas under pressure. This line ran in a southerly direction and was laid at a depth of 18 inches below the surface of the ground and crossed the granted right of way at a depth of 18 inches below the surface to a point approximately 32 inches south of the center line of the 20-inch line or ditch on the right of way, the right of way ditch being approximately 30 inches in width at which point the line came up approximately 12 inches and proceeded easterly, about 6 inches below the surface of the ground and traveled in an easterly direction which was parallel to the right of way. At the point where it made its right angle turn there was a "T" on top of which was installed a bull plug. The top of the bull plug was approximately 2 to 4 inches below the surface of the ground. This bull plug was approximately 17 inches south of the south wall of the excavated trench in which the 20-inch gas line was to be installed, and was owned and placed in position by General Petroleum in 1946, and had been there continuously since its installation. The line to which the bull plug was attached was carrying 50 pounds of pressure of oil and gas on the 12th day of March, 1951, the date of the accident hereinafter mentioned.

Following the execution of the conveyance of the right of way by General Petroleum to Southern California Gas Company on December 26, 1950, the Southern California Gas Company employed Ventura Pipeline Construction Company as an independent contractor to excavate and lay a 20-inch pipe line as a gas line. Earl M. Fisher was employed by Ventura Pipeline Construction Company as a bulldozer and portable derrick operator. The trench in which the 20-inch line was to be laid was excavated by Ventura Pipeline. Mr. Fisher had been working on the job from its start up to the time of the accident resulting in his death.

In excavating the trench it was necessary to uncover the various lines which crossed it in order to expose them and the 20-inch gas line was installed so as not to interfere with any of the lines on General Petroleum property. The 20-inch gas line had been installed under the particular three

and one-half inch line crossing the trench or excavation at a depth of 18 inches below the surface of the ground. Following the laying and installation of the line the dirt which had been piled up parallel to the trench had to be pushed back in the excavation by the process known as back-filling. This loose dirt had been piled on top of the place where the bull plug was located.

Mr. Fisher, while operating his bulldozer in what is known as back-filling operations, pushing the loose dirt back into the excavation, came in contact with the bull plug with the blade of his bulldozer, breaking it, and releasing oil and gas under pressure. The oil and gas thus released was caused to spray over the bulldozer and in a matter of seconds the bulldozer was enveloped in a mass of flames. Mr. Fisher's clothing was ignited and he suffered severe burns as a result of which he died two days later.

Defendants contend:

First: *That the instrument of December 26, 1950, under which Southern California Gas Company entered upon the land of General Petroleum Corporation, created a mere license in the former to lay pipes on the General Petroleum Corporation's land subject to the conditions set forth in the documents.*

This proposition is tenable. ▊ The words "easement" and "license" have been used indiscriminately by courts in interpreting documents and in interpreting a document the courts look to the intent of the parties rather than to the words which they have used. (*Cohen v. Adolph Kutner Co.*, 177 Cal. 592, 594 [171 P. 424, L.R.A. 1918D 410].)

Therefore in interpreting the instrument in question in the instant case this rule must be applied with reference to its language wherein the words "right of way" and "easement" are used. ▊ A license in respect to real property is "an authority to do a particular act or series of acts on another's land without possessing any estate therein." Such a license is defined as a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein. It is an authority to do a lawful act which without it would be unlawful and while it remains unrevoked is a justification for the acts which it authorizes to be done. It confers upon the licensee no interest in the premises. It is a mere personal privilege. (See cases cited in 16 Cal.Jur. (1924) Licenses, § 60, p. 277.)

▊ Applying the foregoing rule to the document in the instant case it is clear that the right of way agreement from

General Petroleum to Southern California Gas Company created a license and not an "easement" as claimed by plaintiff. The gas company acquired no permanent interest in the land because it was given no more than a mere personal privilege to lay its pipe line across the premises of General Petroleum revocable for default in the performance of the terms of the agreement and subject to the condition that defendant General Petroleum Corporation, upon 60 days' notice could require a change or relocation of the right of way without reimbursement. Clearly the gas company acquired no permanent interest in the realty, but merely a right of way which constituted a privilege to pass over defendant General Petroleum's land. (*Cf. County of Alameda* v. *Ross,* 32 Cal.App.2d 135, 143 [89 P.2d 460].)

█ The fact that the right of way agreement provided for delivery by the gas company upon demand of General Petroleum of a quitclaim deed after the termination of its rights, indicated that the gas company acquired no interest whatsoever in the lands belonging to General Petroleum, since a quitclaim deed does not purport to pass a fee simple title but only to release any interest or claim that the grantor possesses in the grantee's property. Since the grant of a right of way to the gas company created no more than a license, it logically follows that the rights and obligations of the parties for personal injuries arising out of the condition of the premises are measured by the law applicable to the relationship of licensor and licensee which brings us to defendants' second proposition:

Second: *Since the Southern California Gas Company was a mere licensee on the land of the licensor, General Petroleum Corporation as such licensor owed the licensee and its agents no duty except not to inflict wanton or wilful injury upon the licensee, its agents or employees while on the land.*

This proposition is likewise sound. █ The rule is well expressed by Mr. Presiding Justice Moore in *Koppelman* v. *Ambassador Hotel Co.* (1939), (hearing denied by the Supreme Court) 35 Cal.App.2d 537, 540 [2] [96 P.2d 196], thus:

"But as to the rights of a licensee, it is the law that where a person goes upon the premises of another without invitation and simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence for such person has taken all the risk

upon himself. (*Means* v. *Southern Calif. Ry. Co.,* 144 Cal. 473 [77 P. 1001, 1 Ann.Cas. 206].) *Such proprietor assumes no duty to the one who is on his premises by permission only and as a mere licensee, except that while on the premises no wanton or wilful injury shall be inflicted upon him."* (Italics added.) (See also *Means* v. *Southern Calif. Ry. Co.,* 144 Cal. 473, 479 [77 P. 1001, 1 Ann.Cas. 206]; *Herzog* v. *Hemphill,* 7 Cal.App. 116, 118 [93 P. 899]; *Kneiser* v. *Belasco-Blackwood Co.,* 22 Cal.App. 205, 207 [133 P. 989]; *Brust* v. *C. J. Kubach Co.,* 130 Cal.App. 152, 161 [19 P.2d 845].)

The present record is devoid of any evidence that defendants or either of them wantonly or wilfully injured the decedent. The evidence is to the contrary. There is no merit in plaintiff's contention that decedent was an invitee of defendant General Petroleum Corporation. An invitation to use the premises of another is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using the premises. Mere permission of an owner or allowing a person to enter and use a certain portion of the premises is indicative of a license merely and not of an invitation. (*Borgnis* v. *California-Oregon P. Co.,* 84 Cal.App. 465, 467 [258 P. 394]; *Hall* v. *Southern Cal. Edison Co., Ltd.,* 137 Cal.App. 449, 454 [30 P.2d 1013].)

In *Hall* v. *Southern Cal. Edison Co., Ltd., supra,* at page 454, the court states: "The work upon which appellant was engaged cannot fairly be said to have been beneficial to the Edison Company. It was beneficial to the Littles because they desired to change the location of the pump and they had procured appellant to perform the work which was necessary to be done to effect this change of location. The Edison Company was not at all interested in the proposed change of location of the pump. There was no contractual relation between the Edison Company and appellant or appellant's employer. We think, therefore, that the evidence clearly indicates that appellant entered upon the property of the Edison Company for purposes of his own and of the Littles and that the work in which appellant was engaged at the time the injury occurred bore no relation to the business of the Edison Company, owner of the pole (*Aguilar* v. *Riverdale C. C. Assn., supra*). It follows that the trial court's action in granting the nonsuit as to respondent Southern California Edison Company was correct and must be sustained.

"We are also of the opinion that the court's action in granting the motion of respondents E. H. Little and Martin Little for a nonsuit was correct. Although appellant was an invitee on the premises of these respondents, no evidence was produced which showed that the Littles knew that the pole was unsafe. Nor do we think that it may fairly be said that these respondents owed to appellant the duty of discovering the hidden defect which caused the pole to break. The evidence, therefore, entirely failed to disclose that the respondents were guilty of negligence in any respect."

Again in *Leslie* v. *City of Monterey*, (hearing denied by the Supreme Court) 139 Cal.App. 715, 720 [34 P.2d 837], the court said: "We think it must be conceded that, as to the appellants, plaintiff had not been expressly or impliedly invited to enter upon their property. There is no evidence which in the slightest degree indicates that there was an express invitation, nor is there any evidence that there was an implied invitation. The plaintiff was employed by a contractor and not by the appellants. The work upon which he was engaged cannot fairly be said to have been beneficial to the appellants herein, or to have been done at their request. It was beneficial only to the City of Monterey and to the contractor who performed the work. The appellants were not at all interested in the construction of the said fence and backstop, nor was there any contractual relation between the appellants and plaintiff, or plaintiff's employer. We think, therefore, the evidence clearly indicates that the work on which plaintiff Leslie was engaged at the time the injury occurred bore no relation to the business of the appellants, nor were they interested therein."

A similar holding is to be found in *Aguilar* v. *Riverdale C. C. Assn.* (hearing denied by the Supreme Court), 104 Cal. App. 263, 267 [285 P. 889].

From the foregoing authorities it is apparent that under the evidence in the case at bar there was no duty devolving upon defendants to inform Mr. Fisher of the bull plug which was the cause of the accident for the reason that the only relationship between him and defendants was that of licensee and licensor. Defendants did not control or supervise the work of decedent nor did they have the right to do so and the mere fact of their tolerance and acquiescence in his presence on the right of way as a licensee did not constitute an invitation express or implied. Therefore since none of defendants wantonly or wilfully inflicted injury

upon decedent no liability attaches to them for the unfortunate injury which resulted in his death.

The rule announced in section 342, volume 2, Restatement of the Law of Torts (1934), page 932, is not, so far as the facts in the present case are concerned, the law in California. See innumerable California cases contrary to the stated rule cited in the California annotations to the Restatement of the Law of Torts, section 342.

Third: *Defendant Alex McLean, as managing agent of General Petroleum Corporation, the land owner, was not personally liable for the injury resulting to Mr. Fisher because of his failure to notify him of the condition of the premises.*

This proposition is also tenable. The rule is established in California that an agent is not liable to third persons for alleged nonfeasance. (*Kataoka* v. *May Dept. Stores Co.,* 60 Cal.App.2d 177, 186 [8] [140 P.2d 467] (hearing denied by the Supreme Court); *Mears* v. *Crocker First Nat. Bank,* 97 Cal.App.2d 482, 490 [218 P.2d 91].)

 Applying the foregoing rule to the facts in the instant case the only basis of the judgment against defendant McLean was his failure to warn decedent of the existence of the bull plug. Such failure in view of the above stated rule did not give rise to any rights in favor of plaintiff.

*Dressel* v. *Parr Cement Co.,* 80 Cal.App.2d 536 [181 P.2d 962], relied on by plaintiff, is not here in point. Such case merely held that the owner of a house, the roof of which was being shingled by plaintiff, was liable to an employee of the independent contractor engaged in the repair work for personal injuries sustained as a result of the defective condition of the roof known to him and to his supervisor of construction—that is, that a principal is chargeable with the knowledge of an agent received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends. It does not hold that liability is imposed upon the agent in favor of a third party for nonfeasance.

In view of our conclusions, it is unnecessary to discuss other propositions argued by counsel.

The judgment is reversed.

Fox, J., concurred.

MOORE, P. J.—I concur with reluctance. In disposing of the issues presented by the appeal, Mr. Justice McComb

has with facile phraseology adhered to the prevailing rule in California that no duty devolves upon a licensor to apprise a licensee of the presence of a dangerous instrumentality in the licensor's land about to be used by the licensee, of its proximity to the surface and of its inherent perils. The facts in the instant action argue eloquently that the better, wiser, more social, more humane rule to be that pronounced by the Restatement of the Law of Torts (vol. 2, p. 932, § 342) which in effect holds the possessor of land liable for bodily harm caused to a gratuitous licensee by a natural or artificial condition thereon, if such possessor knows of the condition, realizes that it involves an unreasonable risk to the licensee and has reason to believe that the latter will not discover the condition or realize the risk and still permits the licensee to enter or remain on the land without exercising reasonable care to remove the danger or to warn the licensee of the dangerous condition and of the risk involved.

The oil company had no valid excuse not to supply the gas company with a map of its concealed facilities and not to warn such licensee of the hidden perils. Its failure to do so is a matter of serious gravity.

A petition for a rehearing was denied March 30, 1954, and respondent's petition for a hearing by the Supreme Court was denied May 6, 1954. Carter, J., was of the opinion that the petition should be granted.